HARPER & WARD, Appellants, v. CARL J. KURTZ, Appellee.

GAMING: Bucket Shops—Nondelivery of Grain—Pleading.  A de-
fendant in an alleged "bucket shop" deal who pleads (*appar-
ently* under Sec. 4967, Code, 1897), that *neither he nor the
broker* ever intended any actual delivery of the grain, does
not estop himself from invoking the aid of Sec. 4975-d, Code
Supp., 1913, which invalidates such contracts *if the broker
alone* intended nondelivery.

     SALINGER, J., dissents.

GAMING: Bucket Shops—Statutes Compared.  Section 4967, Code,
1897, furnishes no remedy against a fraudulent broker who does
not intend delivery of the thing sold, *if the buyer did intend
such delivery.*  Sec. 4975-d, Code Supp., 1913, does furnish such
relief.

TRIAL: Exceptions · to Instructions—Sufficiency.  Exceptions re-
viewed, and held amply sufficient to present the point argued
as grounds for new trial.

TRIAL: Waiver of Exceptions.  If the court be wrong in his in-
structions, and persists in the error by overruling counsel's
specific exceptions, counsel may then adapt himself to the er-
roneous position of the court, and, by requested instructions,
seek, so far as possible, to minimize the erroneous position of
the court.  *By so doing, counsel does not waive his overruled
exceptions.*

     SALINGER, J., dissents, under the record presented.

GAMING: Bucket Shops—Nondelivery—Evidence.  On the issue of
nonintended delivery of grain, evidence is admissible that, from
time to time during a period of three years, defendant, with-
out payment of the purchase price, had "bought" of plaintiff
over 700,000 bushels of grain, and no part of the same had ever
been delivered, through warehouse receipts or otherwise.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

DECEMBER 13, 1919.

REHEARING DENIED APRIL 13, 1920.

ACTION by plaintiffs, a partnership, to recover advance-

ments alleged to have been made by plaintiffs for the defendant as a customer, in the purchase of grain on the Chicago board of trade. The amount claimed was $4,100. There was a verdict for the plaintiffs. Upon defendant's motion, a new trial was ordered. From such order the plaintiffs have appealed.—*Affirmed.*

*J. G. Myerly,* for appellants.

*Read & Read,* for appellee.

EVANS, J.—I. It is the contention of the plaintiff that only one of the many grounds contained in defendant's motion for a new trial was sustained, and that the others were overruled. Without going into the question, we shall take for granted the correctness of the claim of appellant in this regard, and shall consider the propriety of the court's order as being based upon one ground of the motion only. This ground of the motion charged error in Instruction No. 5, given by the court, in that the court therein failed to take account of Section 4975-d of the Supplement to the Code, 1913. The statutes applicable to the case are Section 4967, Code, 1897, and Section 4975-d, Code Supplement, 1913, which are as follows:

1. GAMING: bucket shops: non-delivery of grain: pleading.

"Sec. 4967. It shall be unlawful for any person, corporation, association or society to keep within the state any store, office or other place for the pretended buying or selling of grain, pork, lard, or any mercantile, mining or agricultural products or corporation stocks, on margins, without any intention of future delivery, whether such pretended contracts are to be performed within or without the state; and no person, corporation, association or society within the state shall make or enter into any contract or pretended contract, such as is above stated and referred to; the intention of this section being to prevent and pro-

hibit within the state the business now engaged in and con-
ducted in places commonly known and designated as buck-
et shops. But this section shall not apply or in any way
affect any contract for the actual. buying or selling of any
commodity whatever for present or future delivery, where
the actual delivery or receipt of the thing sold is contem-
plated and in good faith intended by either of the parties
to the contract."

"Sec. 4975-d. That a bucket shop, within the meaning
of this act, is defined to be an office, store or other place
wherein the proprietor or keeper thereof, or other person
or agent, either in his or its own behalf, or as the agent or
correspondent of any other person, corporation, associa-
tion or co-partnership within or without the state, con-
ducts the business of making or offering to make, contracts,
agreements, trades or transactions respecting the purchase
or sale, or purchase and sale, of any stocks, grain, provi-
sions, cotton, or other commodity, or personal property
wherein both parties thereto, or said proprietor or keeper,
contemplate or intend that such contracts, agreements,
trades or transactions shall be, or may be closed, adjusted
or settled according to, or upon the basis of, the public mar-
ket quotations of prices made on any board of trade or
exchange, upon which the commodities or securities re-
ferred to in such contracts, agreements, trades or transac-
tions are dealt in by competitive buying and selling, and
without a bona-fide transaction on such board of trade or
exchange; or wherein both parties, or such keeper or pro-
prietor shall contemplate or intend that such contracts,
agreements, trades or transactions shall be, or may be,
deemed closed or terminated when the public market quo-
tations of prices made on such board of trade, or exchange,
for the articles or securities named in such contracts,
agreements, trades or transactions, shall reach a certain
figure; and also any office, store or other place where the

keeper, person or agent, or proprietor thereof, either in his or its own behalf, or as an agent, as aforesaid, therein makes or offers to make, with others, contracts, trades or transactions for the purchase or sale of any such commodity, wherein the parties thereto do not contemplate or intend the actual or bona-fide receipt or delivery of such property, but do contemplate or intend a settlement thereof based upon differences in the price at which said property is, or is claimed to be, bought and sold. The said crime shall be complete against any proprietor, person, agent, or keeper thus offering to make any such contracts, trades or transactions, whether such offer is accepted or not. It is the intention of this act to prevent, punish and prohibit, within this state, the business now engaged in and conducted in places commonly known and designated as 'bucket shops,' and also to include the practice now commonly known as 'bucket shopping' by any person or persons, agent, corporations, associations or copartnerships, who or which ostensibly carry on the business or occupation of commission merchants or brokers in grain, provisions, cotton, coffee, petroleum, stocks, bonds or other commodities whatsoever."

Instruction No. 5, given by the court, contained the following:

"To make such transactions illegal, it is not sufficient to show that one of the parties to such transaction had no intention of delivering the grain sold, and that such party expected and intended only settlement thereof by paying or receiving the difference in prices, but, before such transactions will be held illegal, it must appear that *both* parties to said transaction mutually intended that no such future delivery thereunder would ever be made, and that the transaction was wholly upon margins and differences in prices between the time of buying or selling and the time of delivery. If you shall find from the evidence in this case that, at the time of the transactions, no future delivery

was, in fact, contemplated by the plaintiffs and the defendant in the purchase or sale of grain by plaintiffs for the defendant, but that the said transactions were based wholly upon margins and the settlement of differences between the price of grain at the time of sale and the time of delivery, then the transactions would be contrary to public policy and void; and, in that event, if you so find, the plaintiffs would not be entitled to recover."

It will be noted from the foregoing that the court wholly lost sight of Section 4975-d, which is also known in the record as Chapter 213 of the Acts of the Thirty-third General Assembly. The only error assigned as a ground of reversal is the court's error in sustaining the motion for a new trial on such ground. The other assignments of error are wholly formal and precautionary, and charged error of the court in sustaining Paragraphs 8, 10, 11, and 12 of the motion for a new trial. It is the contention of the appellant in argument, however, as already indicated, that none of the paragraphs in question were sustained by the court. The only assignment of error argued by the appellant is as follows:

2. GAMING: bucket shops: statutes compared.

"The court erred in sustaining said motion on the ground as stated in his decision and opinion, to wit: The ground based upon the request of defendant to the court that it should instruct the jury upon the law as stated in Chapter 213 of the Laws of the Thirty-third General Assembly; also, the court should have submitted to the jury the questions: (1) As to whether or not the plaintiffs were conducting such business as was prohibited by Chapter 213, Laws of the Thirty-third General Assembly; and (2) whether or not the particular transaction involved in the case was not done in the prosecution of such business."

The broad contention of the appellant is that the case is governed wholly by Section 4967, and that Section 4975-d

has no application thereto. Both of these sections purport to deal with bucket shops. The provisions of both sections are concurrent, in some respects. But the latter statute adds something to the earlier one. Section 4967 provides that it shall not apply in any case where an actual delivery is contemplated by *either* of the parties: that is to say, it furnishes no remedy against a fraudulent broker who did not intend delivery of the thing sold, if his customer was honest in his expectations. In this respect, however, the effect of the statute is wholly negative. It issues no permit to the fraudulent broker, if such he be, to conduct his method of business, even with customers of bona-fide intentions.

Section 4975-d does furnish a remedy against the "proprietor" or "keeper" who does not intend delivery, and this even though the customer, in good faith, expects delivery. There is no necessary inconsistency between the two sections.

It is argued for appellant that Section 4975-d did not repeal Section 4967, and that, therefore, Section 4967 stands. Let it stand. But it is further argued that the last sentence of Section 4967, unless repealed, stands in the way of the application of Section 4975-d to the case. There is nothing to be found in such sentence except a limitation of the application of Section 4967. We think it clear, therefore, that the case does involve a consideration of Section 4975-d, as well as of 4967, and that the trial court properly so held, in his consideration of the motion for a new trial.

II. It is argued that the defendant is precluded by his pleading from invoking the aid of Section 4975-d, in that his pleading was predicated wholly upon Section 4967. It is true that the defendant, in his answer, pleaded that it was not contemplated either by plaintiff or defendant that there should be any actual delivery of the commodity sold. If the evidence on behalf of the defendant satisfied the

jury that the plaintiff, as proprietor or keeper, did not in-
tend actual delivery, would the defendant's pleading pre-
clude him from resting his case upon such evidence? Or
if, in addition to such evidence, he introduced evidence also
to the effect that *he* had no intention of receiving delivery,
would it be fatal to his case if the jury were to find ad-
versely to him as to his own intentions, and yet find with
him as to the intentions of the plaintiff, as proprietor or
keeper? If the defendant pleaded more than he was re-
quired to prove, was he, therefore, bound to prove all that he
pleaded? We have always held otherwise. If the defend-
ant had satisfied the jury that neither party had intended
actual delivery, then he would have prevailed under both
statutes. . If he satisfied the jury that only the plaintiff, as
proprietor and keeper, did not intend actual delivery, then
Section 4967 ceased to be applicable, and defendant would
be entitled to prevail under Section 4975-d. The defendant
was not required to plead the statutes nor to reduce his al-
legations to the measure of the one or the other, even though
it be true that it would have been sufficient for him to plead
that the plaintiff, as proprietor and keeper, did not intend
actual delivery.

III. It is further argued that the defendant did not
properly except to Instruction 5. The record shows that
he did file written exceptions under the statute. His ex-
ception to this instruction includes the fol-
lowing:

**3. TRIAL: excep-
tions to in-
structions: suf-
ficiency.**

"Defendant further objects to said in-
struction because and for the fact that the
same does not correctly state the law, in
that it does not instruct the jury that, if Harper & Ward,
the plaintiffs, who were the proprietors or keepers of the
brokerage office wherein the transactions involved in this
controversy were made, did not intend that delivery should
ever be made of the commodity sold or purchased in said

transactions, these transactions were illegal, as provided in Section 4975 of the Supplement to the Code of Iowa, and the other laws of the state of Iowa applicable thereto; and, for the reasons herein stated, defendant excepts to the giving of said instruction."

Furthermore, Instruction No. 7 contained the same vice as Instruction No. 5, in that it emphasized the fact that there must have been an absence of intention to deliver, on the part of both defendant and plaintiff. To this instruction the defendant made the following written exception:

"Defendant further objects to Instruction No. 7, given to the jury, for the reason that the same incorrectly states the law, and is confusing and misleading, and for the further reason that the instruction places upon the defendant the burden of proving that both he and the plaintiffs had no intention of receiving or delivering any grain in the transactions in controversy, such instruction being in law erroneous and incorrect, and tending to place a greater burden on the defendant than the law actually places on them; and for such reasons, defendant excepts to the giving of said instruction."

We see nothing wanting in these exceptions to bring specifically to the attention of the court the very point which was urged in the motion for a new trial, and which was sustained by the trial court.

IV. It is further argued that the defendant waived his exception by his requested instructions. The court having denied his exceptions, and held, in effect, by Instructions 5 and 7, that Section 4967 was controlling, the counsel for defendant requested the following Instructions 3 and 5:

4. TRIAL: waiver of exceptions.

"3. Defendant in his answer sets up, as a defense, the claim that the transactions concerning which this suit is brought, were what is commonly known as dealing in futures, or options, wherein it was not contemplated

by either party to the transaction that actual delivery of the commodity dealt in was to be made by either party, as the case might be, depending on whether the sale or purchase was involved, and that, on the contrary, all of such transactions were what is commonly known as gambling transactions, because of the fact that no such delivery was contemplated, and that the transactions were to be settled by an offset of the difference between the sale price and the purchase price, as the case might be. You are instructed that, if you shall find from the evidence that the parties to the transaction concerning which this suit has been brought, did not intend nor contemplate that the delivery or deposit of the commodity dealt in was to be made or accepted, and that settlement of such transactions was to be made by offsetting contracts for the sale and purchase of the commodity, as the case might be, and the payment of the difference, then your verdict must be for the defendant, and you will so render it; for the law declares that such transactions are but gambling transactions, and, as such, are illegal and void.

"5. You are instructed that the law declares void all contracts for the purchase or sale of grain or produce where there is no intention to make actual delivery of the grain or produce. You will first determine whether or not, in the case before you, there was actual, bona-fide intention to make actual delivery of the grain or produce, in the instances of the particular sales or purchases out of which the claims sued on by the plaintiff arise.

"If there was no bona-fide, actual intention to make actual delivery of the grain, then the plaintiff cannot recover, and your verdict will be for the defendant; but, if you find there was the actual, bona-fide purpose and intent, at the time, to make actual delivery of the grain or produce, then such transactions were valid."

We think it was the clear right and duty of counsel for

defendant, at this point, to adapt themselves to the view of the law already adopted by the court over their exception, and to soften, as much as they could, the emphasis of the court's Instructions 5 and 7. Surely, we must recognize the right of an attorney to plead with the court for a modification of erroneous views, where a complete correction of them appears impossible of attainment. Requested Instructions 3 and 5 fairly appear to be an attempt to eliminate the emphasis of the instructions given by the court. In the light of the record, they were clearly not intended as a waiver of the exceptions. Furthermore, the appellant, in his brief, specified his grounds relied on for a reversal, and this is not one of them. See *Johnson v. City of Denison,* 186 Iowa 949; *Cram v. City of Des Moines,* 185 Iowa 1292; *Cheney v. Stevens,* 173 Iowa 288; *McDermott v. Ida County,* 186 Iowa 736.

V. It is claimed that there was no evidence to sustain the defense, and that the court should have directed a verdict for the plaintiff. A pivotal fact in the case was that of the intent of the plaintiffs. Such fact could be proved by defendant only by conduct and circumstances. It could be determined by the jury only as a matter of inference. Without going into detail, it was enough to say that the defendant had been a customer of the plaintiffs' for three years, and, during that time, had bought ostensibly 275,000 bushels of corn, 320,000 bushels of wheat, and 135,000 bushels of oats. All the purchases were made from time to time upon small margins, amounting, however, to a sum total of $8,000. Not a bushel of these grains was ever delivered, nor was any warehouse receipt ever delivered. The only kind of delivery claimed by the plaintiff is that it had in its possession warehouse receipts, which it would have delivered to the defendant at any time when he was ready to pay the purchase money. In none of these trans-

5. GAMING : bucket shops : non-delivery : evidence.

actions did the defendant ever. pay the purchase money. This evidence was proper for the consideration of the jury on the question of the intent of both parties or either. We think that the trial court did not err in granting a new trial. The order is, therefore,—*Affirmed*.

LADD, C. J., WEAVER, GAYNOR, PRESTON, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). The majority opinion indicates some trend to affirm this appeal because of defects in presentation. Considerable stress is laid on what is termed the assignments of error, and some little stress on what is "argued." It was settled in *Jahr v. Steffen*, 187 Iowa 168, that the form of the assignment of error, so called, is of so little importance that review may be had when it is entirely absent. It was settled before that that whatever is the "brief point" controls on review. The brief points do make two complaints clear, or perhaps it is more accurate to say one complaint, and a subordinate proposition under it. The complaint is it was error to grant a new trial on the ground that an instruction was erroneous, when, in truth, it was not. erroneous, and that it was also error to grant new trial, even if the instruction were erroneous, because the new trial was granted to one who had induced the alleged erroneous instruction by an offer which the court accepted. In my opinion, these propositions carry farther than their face. The brief point invokes every reason that can legitimately be suggested in support of the proposition asserted. Every legitimate reason for a statement of error cannot be and should not be set out in the assignment. I know of no rule which requires the court to refrain from advancing reasons for dealing with the brief point, and the reasoning power of the court is not circumscribed by merely the reasons that the brief states in terms. The brief point says, in terms, that it was error to grant

the new trial, because the instruction for the giving of which it was granted was not erroneous, and that, in any event, the new trial should not have been granted, because any injury suffered by the movent was self-invited, by offered instruction. In my judgment, if this be found sound, there is no reason why it should not be further advanced as reason for reversing that the error was self-invited, not only by offered instruction, but by the form of the answer interposed, which also invited the giving of said instruction.

The way out attempted is an assertion that the case comes within the rule that one who has met a ruling as to which he has saved his objections is not estopped to complain of that error on appeal because he later offers an instruction seeking to guide the court in applying the law it has announced. The trouble with this position is its premise. It is true that appellee did except to Instruction 5, and therein complains, as he does now, that same was erroneous. The instructions are presumed to be correct. If one is erroneous, and the record shows that, in substance, it is one offered by a party, then, to save the erroneous instruction, it is, on appeal by that party, conclusively presumed that his offer induced the erroneous instruction. It is not *presumed* that the offer was made to guard the court in the application of an erroneous ruling already made against objection. That claim is, in effect, a claim that, because something occurred *before* the instruction was offered, such offer is not the acquiescence in the charge given which, on its face, it appears to be. He who urges such avoidance must prove its predicate: that the exceptions were overruled, and overruled *before* he offered the instruction. If the instruction was offered before the erroneous ruling was made, it cannot be defended because of a ruling which did not exist at the time of the offer. In such case, the offer is not an attempt to limit the effect of an error already committed, but a conclusive admission by the of-

ferant that any instruction given in harmony with the offer is a correct instruction. In one word, to bring the matter within the rule invoked by the majority, there must be some evidence in the record that the offer came after the exceptions. There is no such proof. The abstract shows nothing more than that the instruction was offered, and that certain exceptions were taken. It does not even indicate at what stage of the trial these things were done, and which of them was done before the other. Not only is this so; everything indicates that the instruction was offered before the exceptions were taken. The statute provides that either party may request instructions; that all requests therefor must be presented before the argument to the jury is commenced; and that all objections or exceptions must be made or taken before the instructions are read to the jury. It is matter of common knowledge in the profession that, ordinarily, there is no opportunity to except to instructions before the arguments to the jury begin. The cases are exceedingly rare where the charge would be ready for the examination of counsel before either addressed the jury. The instructions naturally wait until all the evidence is in, and the arguments ordinarily begin at once after the evidence is in. Some light is thrown on this situation by the fact that, since this case was tried, the legislature has extended the time for taking exceptions to the charge to five days after verdict. I cannot see how the alternative rule has any room for application on this appeal.

II. My position is that, where an instruction given is the equivalent of one offered by a party, he is estopped to claim a new trial because such instruction was given. The estoppel urged is upon the party who seeks to subject his adversary to the vicissitudes and expense of a second trial, because of something which he has done, and for which the adversary is in no way chargeable. One who has created the necessity for applying for a new trial, because

he succeeded in inducing the court to give an erroneous instruction, should not be permitted to take away the verdict of his opponent. To grant a new trial in such conditions is to allow a party to use his wrong or negligence for his own benefit. The active inducing of the court to commit an error is surely of as much effect against him who thus acts as would be his omission to act,—negligence; and time and again has the granting of new trial been reversed because the one who obtained it might not have needed it, had he not been negligent. This has been held under a statute identical with our own. *Clifford v. Denver, S. P. & P. R. Co.,* 12 Colo. 125 (20 Pac. 383). That, in effect, is the holding of *Town of Manson v. Ware,* 63 Iowa 345, 349; *Collins v. City of Keokuk,* 147 Iowa 605; *Shepherd v. Brenton,* 15 Iowa 84; *Riley v. Monohan,* 26 Iowa 507; *Stewart v. Ewbank,* 3 Iowa 191; *Mehan v. Chicago, R. I. & P. R. Co.,* 55 Iowa 305; *Richards v. Nuckolls,* 19 Iowa 555; and *Keys v. Francis,* 28 Iowa 321.

III. There is no change in statute law which makes the instruction erroneous. The older statute prohibits certain things, and has a proviso that it shall not apply to these things if *either* party intended, in good faith, to make actual sale and delivery. The change in statute merely prohibits some things *not* prohibited in the original statute, and fails to apply the proviso of the older statute *to the things forbidden by the new one.* The exact effect is that the matters in the old statute are controlled by the proviso, while those in the new statute are not. The instruction given was not erroneous because it gave the benefit of the proviso to facts within it, and doing this cannot possibly be made erroneous because there are other prohibited acts to which the proviso does not apply. It seems to me that is the reason on which *Lamson v. Mensen* is affirmed.

IV. The majority seems to grant that the original section still stands, and takes the position that that makes no

difference. Does it not make a vital difference on whether the defendant is estopped by his answer from obtaining a new trial because of this instruction? If the original statute stands, is not that fatal to defendant, because his answer was framed under that statute, and the instructions merely followed such answer? Under the original section, it was a good defense if *both* parties had no intent to make actual delivery. Grant that, under the new statute, it is a good defense, as to some things, if *either* party lacked such intent. It remains a good defense under both statutes that both lacked such intent. The defendant was at perfect liberty to frame his defense upon the older statute. If the new statute gave him an easier defense, still he had the right to forego that, and to defend with what is a defense under the older statute. He took that course. He was evidently of opinion that the matters involved in the suit were not covered by the new statute; that he must face the proviso in the older statute, and, therefore, make it his affirmative defense that *both* parties had no intention to make an actual sale. He necessarily assumed the burden of proving this. The instruction for which the new trial was granted did nothing more than to tell the jury that defendant had the burden of proving the plea he had presented. This, therefore, is not, as the majority seems to think, a case for invoking the rule that, though one plead more than he need, he may recover though he prove less than that, if such proof makes a case under the law. This is not a case of surplusage in pleading. It is, at worst, a case of underpleading— a failure to claim as much as might be claimed. It is simply a case of a party limiting his own lawsuit, as he had a right to do, and a recognition of that limitation in the charge of the court.

I would reverse.