LAMSON BROS. & COMPANY, Appellee, v. HENRY MENSEN, Appellant.

GAMING: Bucket Shopping—Non-Intent to Deliver.   Testimony
1  that the buyer of corn said to the seller that he was going to speculate in corn, and did not want his bank to have knowledge thereof, will not justify an instruction authorizing the jury to find that the buyer did not intend that delivery should be made.

GAMING: Rebuttable Prima-Facie Presumption of Illegality.   The
2  presumption of illegality arising from the failure of the commission merchant to furnish the buyer of grain with the statutory written statement of the name of the person from whom the grain had been purchased is rebuttable.

TRIAL: Reception of Evidence—Order of Proof.   An objection that
3  testimony was not "rebuttal" simply goes to the order of proof, and does not embrace competency, relevancy, or materiality.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

NOVEMBER 22, 1919.

ACTION for damages for the breach of an alleged contract for the purchase of 20,000 bushels of corn.   There was a verdict and judgment in favor of the plaintiff, and defendant appeals.—*Affirmed.*

*Kass Bros. & Sievers,* for appellant.

*Shull, Gill, Sammis & Stilwill,* for appellee.

STEVENS, J.—I.  Plaintiff is a commission company, incorporated under the laws of the state of Illinois, a member of the Chicago Board of Trade, with its principal place of business in Chicago, and having a branch office at Sioux City. Defendant is a farmer, residing near Remsen in this state.

1. GAMING: bucket shopping: non-intent to deliver.

Plaintiff claims that defendant, through its Sioux City office, authorized it to purchase for him 20,000 bushels of corn for December, 1915, delivery on the Chicago Board of Trade; that same was purchased, in accordance with such authority; and that the defendant refused to carry out his part of the contract. The corn was later sold by plaintiff at a loss. This action is to recover the difference between the price for which the corn was bought and the price for which same was sold.

Defendant, for answer, in addition to a general denial, avers that the order was conditional for the purchase of 2,000 bushels of corn only; that, if any was purchased by plaintiff for defendant, it was without authority; and that it was the mutual agreement and understanding of both parties, at the time, that delivery of the corn was not intended or contemplated, and that settlement and adjustment would be made upon the basis of the public market quotations of the Chicago Board of Trade; and that said contract is, therefore, invalid, under Section 4975-d of the Supplement to the Code, 1913.

The keeping or maintaining of a bucket shop in this state is made unlawful by said section. A bucket shop is defined by Section 4975-d as:

"An office, store or other place wherein the proprietor or keeper thereof, or other person or agent, either in his or its own behalf, or as the agent or correspondent of any other person, corporation, association or copartnership within or without the state, conducts the business of making, or offering to make, contracts, agreements, trades or

transactions respecting the purchase or sale, or purchase and sale, of any stocks, grain, provisions, cotton, or other commodity, or personal property, wherein *both parties thereto,* or said *proprietor* or *keeper,* contemplate or intend that such contracts, agreements, trades or transactions shall be, or may be closed, adjusted or settled according to, or upon the basis of, the public market quotations of prices made on any board of trade or exchange, upon which the commodities or securities referred to in such contracts, agreements, trades or transactions are dealt in by competitive buying and selling, and without a bona-fide transaction on such board of trade or exchange; or wherein both parties, or such keeper or proprietor shall contemplate or intend that such contracts, agreements, trades or transactions shall be, or may be, deemed closed or terminated when the public market quotations of prices made on such board of trade, or exchange, for the articles or securities named in such contracts, agreements, trades or transactions, shall reach a certain figure; and also any office, store or other place where the keeper, person or agent, or proprietor thereof, either in his or its own behalf, or as an agent, as aforesaid, therein makes or offers to make, with others, contracts, trades or transactions for the purchase or sale of any such commodity, wherein the parties thereto do not contemplate or intend the actual or bona-fide receipt or delivery of such property, but do contemplate or intend a settlement thereof based upon differences in the price at which said property is, or is claimed to be, bought and sold."

The purpose of the foregoing enactment, as stated in the above section, is to "prevent, punish and prohibit, within this state, the business now engaged in and conducted in places commonly known and designated as 'bucket shops,' and also to include the practice now commonly known as 'bucket shopping' by any person or persons, agent, corporations, associations or copartnerships, who or which osten-

sibly carry on the business or occupation of commission mer-
chants or brokers in grain, provisions, cotton, coffee, pe-
troleum, stocks, bonds or other commodities whatsoever."

The statute, therefore, is designed to prohibit "bucket
shopping," to provide a penalty for keeping same, and to
make invalid certain contracts entered into by or on be-
half thereof. The prohibitions of this statute apply only to
contracts in which both parties thereto contemplate or in-
tend that same shall "be closed, adjusted or settled accord-
ing to, or upon the basis of, the public market quotations of
prices made on any board of trade or exchange, upon which
the commodities or securities referred to in such contracts,
agreements, trades or transactions are dealt in by competi-
tive buying and selling, and without a bona-fide transac-
tion on such board of trade or exchange," or contracts in
which the "keeper or proprietor shall contemplate or intend
that such contracts  *  *  *  shall be, or may be, deemed
closed or terminated when the public market quotations of
prices made on such board of trade, or exchange, for the
articles or securities named in such contracts  *  *  *
shall reach a certain figure." No specific penalty is visited
upon the party to such contracts who is not a bucket shop
keeper, proprietor, etc.

The court, in its seventh instruction, informed the
jury, in substance, that, if neither the plaintiff nor the de-
fendant, at the time the contract was made, intended that
there should be an actual sale and delivery of the corn, then
the contract, in law, would be a gambling contract, and
void. The only exception taken by counsel to the above in-
struction was as follows:

"The defendant objects and excepts to Par. 7 of said
instructions, for the reason that the same does not state
the law, as applied to this case, in that the court fails to
instruct the jury, in substance, that, if they find from the
evidence that the defendant did not intend that there should

be an actual sale or delivery of the corn, but merely intended such transaction as a speculation or a gamble on the chance of a rise or fall of the market price of said corn, and that the defendant informed Walter Copeland, the plaintiff's employee, and manager of the Sioux City office, of such intention, or although the defendant may not have informed the plaintiff or Walter Copeland, its manager and employee, that he intended to speculate or gamble on the rise or fall of the market price of said corn, without any intention of actual delivery, but if the plaintiff or Walter Copeland, its employee, from all the facts and circumstances did have knowledge that the defendant, by and in such transaction, intended to speculate and gamble, that the verdict of the jury should be for the defendant."

The foregoing exception goes rather to the failure of the court to instruct further, than to the correctness of the instruction given. The instruction was rather brief, but substantially correct, so far as it went. If, at the time, neither party intended or contemplated the actual delivery of the corn purchased, but if both intended that the profit or loss should be settled or adjusted on the market quotations of the board of trade, the contract came within the prohibitions of the statute, and plaintiff could not recover damages for the alleged breach thereof. Counsel for defendant, however, tendered an instruction in appropriate form, presenting the thought expressed by the exception stated above. The request was refused by the court, and, we think, properly so. The question of the intention of the parties at the time the contract was entered into was, of course, material, but was a question of fact for the jury. In arriving at such intention, the jury should take into consideration the circumstances surrounding the transaction, and all that was said and done by the parties at the time. It is, therefore, important in this connection to con-

sider the testimony of the defendant upon this phase of the transaction. He testified as follows:

"I rang him up about 10:30, I think it was,—somewheres along there,—and a man came to the phone, and said he was Walter Copeland; and I asked him what he thought about the corn. 'Well,' he said, 'it is pretty cold;' and I asked him whether he thought it would freeze. He said he thought it would,—it might; and I asked him, I says, 'I was going to. speculate in corn, a small order, about a few thousand bushels;' and he asked me what I was doing, and I told him I was farming at Remsen, and he said,—'Well, I would like to buy a few thousand bushels if I could;' and he said, 'Well, you will have to put up a 3 cent margin.' And I told him I didn't like to do it,—I didn't like the bank to find out that I was speculating."

The whole conversation, as shown by this testimony, related to the purchase of a few thousand bushels of corn; and the reason given by defendant for such purchase was that the weather was unfavorable, and he anticipated a rise in the market price of corn. Nothing was said about delivery; but this would naturally be implied from the purchase; nor was anything said about speculating on the rice or fall of the market or gambling on the board of trade. It would clearly have been error for the court to have given the instruction. Conceding it to be the law, therefore, as contended by counsel for appellant, that a broker or commission merchant who has purchased grain or other commodities upon the board of trade for a principal who has employed him to purchase the same, upon terms made unlawful by the statute, could not recover his loss, if any, from his principal, even though he has legally bound himself by the purchase, this would not aid the defendant in this case, for the reason that the evidence would not justify the giving of the requested instruction. Of course, under the foregoing statute, if the keeper alone did not intend a

bona-fide transaction, he could not recover, but that question is not raised by the exception to the instruction, nor by request for an instruction upon the point.

II.    It is also insisted by counsel for appellant that certain statements offered in evidence by plaintiff, for the purpose of showing compliance with Section 4975-g, Supplement to the Code, 1913, did not, in form or substance, meet the requirements thereof. The failure of a commission merchant, agent, or broker engaged in buying and selling stocks, bonds, grain, cotton, and other commodities or personal property in this state to furnish any customer or principal for whom such commission merchant or broker acts, "a written statement containing the names of the parties from whom such property was bought, or to whom it shall have been sold, as the case may be, the time when, the place where, and the price at which, the same was either bought or sold, * * * shall be prima-facie evidence that such property was not sold or bought in a legitimate manner, but was bought in violation hereof." The court fully covered this point by an appropriate instruction. The evidence of plaintiff's transactions on the board of trade, relied upon by it to show the purchase and sale of 20,000 bushels of corn, is not disputed, and may have been regarded by the jury as sufficient to overcome the prima-facie showing made by the failure, if shown by the evidence, of plaintiff to deliver the required statements to the defendant. There was evidence from which the jury could have found that statements were, in fact, mailed to and received by the defendant. Whether, in form, they complied with the statute, we need not consider, as the failure to deliver the same, if shown, did not render the contract void or unenforcible, but was prima-facie evidence only that the property was not sold or bought in a legitimate transaction.

2. GAMING: rebuttable prima-facie presumption of illegality.

III.   Counsel for appellant also complains of the ruling of the court admitting certain testimony over his objections.   All of the testimony complained of that is covered by the brief points of counsel was offered by plaintiff after defendant had rested.   The only objection offered to most of this testimony was that it was not rebuttal. . This objection went only to the order of its introduction, and did not challenge the competency, relevancy, or materiality thereof.   The order of the introduction of evidence rests largely in the discretion of the court.   There is nothing in the record to show it abused its discretion in this instance.   Some of the testimony offered, at least, was probably properly rebuttal; some of it was not; but, under the rule above stated, no reversible error was committed by the court in the rulings complained of.

3. TRIAL: reception of evidence: order of proof.

In addition to the objection that it was not rebuttal, the further objection that it was immaterial, irrelevant, and incompetent was urged to some of the evidence received; but we are unable to see in what way the defendant could have been prejudiced thereby, even if the testimony was erroneously admitted.   Much evidence of similar character and of doubtful competency was received before objection was made thereto; and, in any event, defendant could not have been seriously affected by this evidence.

Some other questions are discussed by counsel, but a careful consideration of the whole record fails to reveal grounds for reversing the judgment of the court below. The contention is made that the verdict of the jury is contrary to and not supported by the evidence.   It will serve no good purpose to discuss the evidence at length, as we are convinced that it is sufficient to sustain the verdict. We find no reversible error in the record, and the judgment of the court below is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.