### BROWNE v. THORN et al.

(Circuit Court of Appeals, Eighth Circuit.　April 15, 1921.)

No. 5602.

1. **Appeal and error ⚖══1097(1), 1195(1)—Questions decided on former appeal cannot be considered on retrial or second appeal.**

Questions decided in the first review in a case become the law of the case, and binding as such, not only on the trial court at the second trial, but also on the appellate court on a second appeal or writ of error.

2. **Gaming ⚖══49(1)—Written directions to brokers for purchase or sale are presumed not to be gambling transactions.**

Where the directions by a customer to his brokers for the purchase and sale of cotton for future delivery were by telegram and correspondence, and the brokers had no interest in the transactions other than as brokers for the customer, the contracts, if fair on their face, are presumptively lawful, and the burden was on defendant to prove his defense that they were wagers on the fluctuations of the market and mere gambling transactions.

3. **Gaming ⚖══12—Purchase or sale of cotton for future delivery valid in Louisiana, if only one party intended gambling transaction.**

By the law of Louisiana, a contract for the purchase or sale of cotton for future delivery, though void if both parties intended the transaction as a wager on the market movements, to be settled by differences, is not void if only one of them has that intention.

4. **Gaming ⚖══49(2)—Evidence that other parties dealing with brokers on exchange intended gambling transactions is incompetent.**

In an action by cotton brokers for the balance due from their customers, where the defense was illegality because the dealings were gambling transactions, testimony offered by defendant that the witness testifying had dealt with the brokers in the purchase and sale of cotton on the exchange for future delivery, and that he had no intention to deliver or accept cotton under his contracts, was incompetent.

5. **Estoppel ⚖══68(2)—Customer asserting as defense illegality of transaction cannot maintain cross-complaint therefor.**

In an action by a broker against his customer for the balance due, where the customer defended on the ground that the transaction was

---

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

illegal as a gambling transaction, the customer cannot maintain a cross-action against the brokers to recover the amounts advanced by him, which by his own allegations were for an illegal purpose.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by Charles B. Thorn and others against Fred Browne. Judgment for plaintiffs, and defendant brings error. Affirmed.

Certiorari granted 255 U. S. ——, 41 Sup. Ct. 625, 65 L. Ed. ——.

James B. McDonough, of Ft. Smith, Ark., for plaintiff in error.

Joseph E. Johnson, of Atlanta, Ga., L. C. Going, of Memphis, Tenn., and Ben Cravens and Ira D. Oglesby, both of Ft. Smith, Ark., for defendants in error.

Before SANBORN and HOOK, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. This litigation arose out of dealings on the New Orleans Cotton Exchange. Plaintiffs were brokers and members of the exchange. They allege in their complaint that between January 24 and February 1, 1917, they bought and sold for defendant, at his request, on said exchange, 2,000 bales of cotton for delivery in the month of May following; that in these transactions they advanced and paid out for him a large sum of money, for which sum they have demanded judgment. Upon the trial, verdict and judgment were in favor of plaintiffs, and defendant has brought the case to this court for review, and prays a reversal of the judgment on account of errors alleged to have occurred at the trial.

This is the second time the case has been in this court. At the first trial in the court below a verdict was directed for the defendant, and a judgment entered dismissing the action. The judgment of the trial court was reversed by this court, and a new trial granted. Thorn v. Browne, 257 Fed. 519, 168 C. C. A. 469. At the second trial plaintiffs had judgment, and the defendant is now the plaintiff in error.

[1] The great majority of the 143 specifications contained in the assignment of errors of the defendant relate to questions considered and disposed of in the former decision of the case. It is settled law in this jurisdiction that:

"A legal proposition once considered and decided in a given cause by an appellate court may not be again questioned in that court on a subsequent writ or appeal to review a subsequent trial of the same case on the same issues and evidence. Such propositions are res adjudicata between the parties to that suit and their privies and constitute the law of the case." Town of Fletcher v. Hickman, 208 Fed. 118, 125 C. C. A. 346.

Upon the second trial the lower court could not do otherwise than follow the decision of this court and apply the rules of law announced therein, and that decision is equally binding upon this court at this time. As stated in Balch v. Haas, 73 Fed. 974, 20 C. C. A. 151:

"A judgment rendered by an appellate court in a given case is conclusive on the parties thereto, and * * * an appellate court, like a nisi prius court, is powerless to review or revise its own judgments after the lapse of

the term at which they were rendered, except in cases of fraud. Another form of stating the doctrine is that propositions of law which were considered and decided on a first appeal become the law of that particular case, and, whether right or wrong, must be adhered to on a second appeal."

[2] The defendant has assigned as error the refusal of the court below to direct a verdict in his favor. The ground upon which it is claimed this instruction should have been given, remaining open for our consideration, is that the transactions alleged in the complaint were gambling ventures; that is to say, the pretended purchases and sales of cotton were mere wagers on the fluctuation of the market, to be settled according to the differences between the contract and the market prices.

The plaintiffs resided at New Orleans; the defendant, at Ft. Smith, in the state of Arkansas. The business was conducted by telegrams and letters between the parties. Plaintiffs had no interest in the purchases and sales they were directed to make, other than as defendant's brokers. Notwithstanding the vehemence of counsel for the defendant, we do not think the correspondence of the parties indicates that the transactions were not intended to be legitimate. The contracts were fair on their face and presumptively lawful, and the defendant having asserted that they were wagers upon the fluctuations of the market, and mere gambling transactions, the burden was on him to prove it. Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183. In discussing this same defense, this court, in Wilhite v. Houston, 200 Fed. 390, 118 C. C. A. 542, says:

"The character of such exchanges, their legitimate relation to the business world, and their operations are described in Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, where some of the aspects of the case at bar which counsel deem sinister find adequate explanation. The plaintiffs had no interest in the sales and purchases they were directed to make, other than as defendant's brokers; and this relation, as between them, was not affected by the fact that in executing defendant's orders the plaintiffs assumed the position of principals toward those they dealt with. Clews v. Jamieson, 182 U. S. 461, 481, 21 Sup. Ct. 845, 45 L. Ed. 1183. An order from a customer to a broker, to be executed upon a board of trade contemplates conformity to the rules and customs which prevail there. Bibb v. Allen, 149 U. S. 481, 489, 13 Sup. Ct. 950, 37 L. Ed. 819. The rules of the boards of trade at Kansas City and Chicago prohibited gambling transactions.

"As regards their legality the sales and purchases of grain in the Chicago market were governed by the law of Illinois; those in the Kansas City market, by the law of Missouri. Berry v. Chase, 77 C. C. A. 161, 146 Fed. 625; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617. In Illinois a contract of sale or purchase of a commodity for future delivery is void if both parties intended it as a wager upon the market movements to be settled by differences, but not if only one of them has that intention. That is the general rule in the absence of statute. In Missouri the contract is declared void by statute if either party so intends, though the other does not. Cleage v. Laidley, 79 C. C. A. 284, 149 Fed. 346. Nothing appeared in the correspondence of the parties or their conferences before the controversy arose to indicate that the transactions were not intended to be legitimate. The mere fact that no grain was actually delivered or received, but that the sales and purchases were set off against others according to the custom of exchanges, did not show they were illegal. Cleage v. Laidley, supra.

"The contracts were therefore fair on their face and presumptively lawful, whatever may have been the undisclosed intention of defendant. In this situ-

ation the law is that, when defendant asserted they were wagers upon the fluctuations of the market, the burden was on him to prove it. Clews v. Jamieson, supra, 182 U. S. 491, 21 Sup. Ct. 845, 45 L. Ed. 1183."

[3] In Louisiana as in Illinois, a contract of purchase or sale of a commodity for future delivery is void, if both parties intended it as a wager upon the market movements, to be settled by differences, but not if only one of them has that intention. Conner v. Robertson, 37 La. Ann. 814, 55 Am. Rep. 521. The question of the illegality of the transaction as gambling ventures was submitted to the jury for their determination by the trial court in its charge, in which the legal principles enunciated in Wilhite v. Houston were fully and clearly stated. In thus submitting this question to the jury the defendant has no cause to complain.

[4] The defendant has assigned as error the refusal of the court to permit a witness called by him to testify that the witness had dealt with plaintiffs in the purchase and sale of cotton on the New Orleans Exchange for future delivery, and that he had no intention at the time to deliver or accept cotton under his contracts. In Roundtree v. Smith, 108 U. S. at page 276, 2 Sup. Ct. 632, 27 L. Ed. 722, the court said:

"Evidence was given that a very large proportion of all the contracts made for the sale of produce at the Board of Trade of Chicago, were settled by payment of differences, and that nothing else was expected by the parties to them, and the number of these in proportion to the number of bona fide contracts, in which delivery was expected and desired, is said to be so large as to justify the inference that it was so in these cases. But since the plaintiff testifies that he had no such understanding, since nothing is proved of the intention of the other parties, and since the contracts were always in writing, we do not think the evidence of what other people intended by other contracts of a similar character, however numerous, is sufficient of itself to prove that the parties to these contracts intended to violate the law, or to justify a jury in making such a presumption."

The trial court did not err in excluding the testimony of this witness.

[5] At the time of closing his account, the defendant had to his credit on the books of the plaintiffs a balance of $6,760. Upon closing the account, the plaintiffs applied this balance in part payment of the amount expended by them in settlement of the transactions alleged in the complaint. The defendant, by counterclaim, has sought to recover this balance of $6,760. The trial court directed a verdict for plaintiff on the counterclaim, and the defendant has assigned this action of the court as error. This assignment is without merit. The sum above mentioned was the balance of a running account which the defendant had carried with plaintiffs since about the 1st of October, 1916. In the account the credits consisted of moneys advanced by defendant and of profits realized from purchases and sales of cotton upon the exchange; the debits consisted of moneys withdrawn from the account by defendant, of commissions of plaintiffs as brokers in the purchases and sales by defendant upon the exchange, and of losses sustained in the business—the balance being the sum above stated at the time the account was finally closed and prior to its application in part payment of the amount expended by plaintiffs in the transactions alleged in the complaint. The defendant in his counterclaim alleged, and at the trial

continued to assert, that all of the transactions evidenced by the account from its inception to its end were gambling ventures. In Higgins v. McCrea, 116 U. S. at page 684, 6 Sup. Ct. at page 564 (29 L. Ed. 764), the court, in discussing a similar case, says:

"His case, as stated by himself in his answer and counterclaim, was that the money was advanced by him to carry on a gambling transaction, that with his concurrence the money so advanced was used in such gambling transactions, and that by the statutes of Illinois, where the contracts were made, they were treated as gaming contracts and declared illegal and void, and the making of them a criminal offense. The counterclaim thus stated was supported by the testimony of the defendant himself, given upon the trial. There was no statute of Illinois to authorize the recovery of money paid on such contracts. The cross-action, therefore, of the defendant, stated in his pleading and supported by his own deposition, was not one on which any recovery could be had."

The specifications of error not already considered relate to questions decided in our former decision, or are specifications so clearly without merit as not to call for discussion.

We find no error in the record and the judgment will be affirmed. It is so ordered.