## BROWNE *v.* THORN ET AL., PARTNERS, DOING BUSINESS AS THORN & MAGINNIS.

### ERROR AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 88. Argued October 20, 1922.—Decided November 13, 1922.

1. In an action by brokers to recover from their customer the balance of their account for purchases and sales of cotton made on their exchange pursuant to his orders, it is not a defence that the transactions were gambling because he had no intention to receive or deliver the actual cotton, if his intention in that regard was not disclosed to the brokers. P. 139.

2. Hedging—a means whereby manufacturers and others who have to make contracts of purchase and sale in advance, secure themselves against fluctuations of the market by counter contracts—is *prima facie* lawful. P. 139.

3. Section 4 of the "United States Cotton Futures Act", must be read in the light of construction of similar language of the Statute

of Frauds, and does not require that bought and sold notes should name the principals and be signed by both brokers.[1]  P. 140.

4. Evidence of an understanding between the parties *held* to justify interpreting a telegraphic " stop " order from a customer to his brokers as directing sale of his cotton at the prices specified in the order, or, if those could not be got, at the next best price possible. P. 140.

272 Fed. 950, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals, affirming a judgment for the plaintiffs in an action by brokers, to recover from their customer, Browne, the balance of their account for purchase and sale of cotton, on a cotton exchange of which they were members.  The case went twice to the court below.  See 257 Fed. 519; 272 Fed. 950.

*Mr. James B. McDonough*. for petitioner.

*Mr. Ira D. Oglesby* and *Mr. L. C. Going*, with whom *Mr. Jos. E. Johnson* and *Mr. Ben Cravens* were on the brief, for respondents.

MR. JUSTICE HOLMES delivered the opinion of the Court.

---

[1]Act of August 11, 1916, c. 313, Part A, 39 Stat. 446, 476.

" Sec. 3. That upon each contract of sale of any cotton for future delivery made at, on, or in any exchange, board of trade, or similar institution or place of business, there is hereby levied a tax in the nature of an excise of 2 cents for each pound of the cotton involved in any such contract."

" Sec. 4. That each contract of sale of cotton for future delivery mentioned in section three of this Act shall be in writing plainly stating, or evidenced by written memorandum showing, the terms of such contract, including the quantity of the cotton involved and the names and addresses of the seller and buyer in such contract, and shall be signed by the party to be charged, or by his agent in his behalf. If the contract or memorandum specify in bales the quantity of the cotton involved, without giving the weight, each bale shall, for the purposes of this Act, be deemed to weigh five hundred pounds."

This is a suit brought by the respondents, cotton brokers, to recover the balance of an account for the purchase and sale of 2,000 bales of cotton on the New Orleans Cotton Exchange. At a first trial a verdict was directed for the defendant on the ground that broker's seller's slips coupled with oral evidence that corresponding buyer's slips were executed, or vice versa, were not competent evidence of the transactions, under the United States Cotton Futures Act. Act of August 11, 1916, c. 313, Part A, § 4, 39 Stat. 446, 476. The judgment was reversed by the Circuit Court of Appeals after a very satisfactory discussion. 257 Fed. 519. There followed a second trial in which the verdict was for the plaintiffs and a judgment, sustained by the Circuit Court of Appeals, 272 Fed. 950, that is brought here by writ of error, supplemented by a petition for a writ of certiorari. There is no ground for the writ of error on the record, although the plaintiff in error now, in view of *Hill* v. *Wallace,* 259 U. S. 44, argues that the Cotton Futures Act is void except in the taxing provision enacted as an alternative to compliance with its regulations. A petition for certiorari was granted at the October Term, 1920, 256 U. S. 689.

The first ground relied upon for the petition is that the transactions were gambling transactions. That was the petitioner's contention at the trial, but to put it at the lowest, there was evidence to the contrary, the question was left to the jury with instructions that if the plaintiffs knew that the defendant had no intention to deliver or receive the actual cotton they could not recover, and the jury found for the plaintiffs. The defendant contended that his undisclosed intention was enough to defeat the plaintiff's claims; but that is not the law. It is objected that the judge instructed the jury that hedging was lawful, hedging being explained as a means by which manufacturers and others who have to make contracts of purchase or sale in advance secure themselves against the fluctuations

of the market by counter contracts. Prima facie such transactions are lawful. *Chicago Board of Trade* v. *Christie Grain & Stock Co.,* 198 U. S. 236, 249.

The bought and sold notes executed on the Exchange mentioned only the names of the brokers and neither was signed by both the brokers. It is said that the act of Congress, § 4, was not satisfied. We agree with the Circuit Court of Appeals that the language of § 4 of the Cotton Futures Act must be read in the light of the decisions upon the similar language of the Statute of Frauds and that the notes were sufficient; assuming without discussion that in this case it was necessary to prove that § 4 was followed. See *Bibb* v. *Allen,* 149 U. S. 481.

Perhaps the most serious of the petitioner's defences was that the 2,000 bales of cotton were sold without authority. As stated by his counsel, on Germany's announcing unrestricted submarine warfare, cotton fell and the petitioner telegraphed to the defendants to sell 2,000 bales. The telegram read as follows: " Stop ten seventeen twenty and ten seventeen fifteen "—which is understood to carry a direction to sell one thousand bales at 17.20 cents per pound and one thousand at 17.15. But there was clear and sufficient evidence that such stop orders as they were called were understood to direct not only sale at the price mentioned but, if that could not be got, a sale at the next best possible price. The respondents sold at fourteen cents which was the best that could be done. We think it unnecessary to go into further detail to show that the judgment should be affirmed.

*Judgment affirmed.*