## HOYT v. WICKHAM et al.

Circuit Court of Appeals, Eighth Circuit.
April 19, 1928.

No. 7943.

1. **Gaming ⬤⟿2—Contracts for purchase and sale of grain, executed on Chicago Board of Trade, held governed by law of that jurisdiction (Grain Futures Act Sept. 21, 1922 [7 USCA §§ 1–17]).**

Contracts for the purchase and sale of grain on Chicago Board of Trade, between a resident of the state of Iowa and a member of the Chicago Board of Trade, though made through a local independent broker, *held*, governed by law of jurisdiction of the Chicago Board of Trade, either by state law of Illinois or Federal Grain Futures Act Sept. 21, 1922 (7 USCA §§ 1–17).

2. **Gaming ⬤⟿12—Customer's intention not to deliver or receive grain purchased on Board of Trade does not of itself establish "gambling contract" (Federal Grain Futures Act [7 USCA §§ 1–17]).**

Intention of one dealing in purchase and sale of grain on Board of Trade not to deliver or receive any of grain involved in transaction does not of itself establish existence of a "gambling contract," either under state law or provisions of the Federal Grain Futures Act (7 USCA §§ 1–17), unless intention in that respect is disclosed to brokers.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gambling Contract.]

3. **Gaming ⬤⟿49(1)—Defendant, in action on note given for commissions in purchase and sale of grain on Board of Trade, has burden of proving transactions constituted gambling (Grain Futures Act, § 4(b); 7 USCA § 6(b).**

Defendant, in action on note given as settlement of balance due for commissions on purchase and sale of grain on Board of Trade, has burden of proving allegation that trades made were gambling transactions, not coming within exception of Grain Futures Act, § 4 (b), 7 USCA § 6 (b), though reply alleged that purchases and sales of grain on Board of Trade were governed by statutes of United States and by rules and regulations of interstate commerce.

4. **Compromise and settlement ⬤⟿15(2)—Execution of note for commissions in sale and purchase of grain on Broad of Trade, after action therefor, precluded defense of invalidity of transactions (Code Iowa 1927, § 11055).**

Where, after notice of action to recover commissions in purchase and sale of grain on Board of Trade had been served, so that action was deemed commenced under Code Iowa 1927, § 11055, a compromise was consummated whereby defendant executed a note extending payment for a period of six months, defendant was estopped in subsequent action on note to plead or prove that transactions were unlawful, since, regardless of validity of original transaction, the compromise, effected in good faith, estopped either party from any further litigation of matter in dispute.

25 F.(2d)—49½

5. **Bills and notes ⬤⟿94(2)—Compromise of disputed claim is sufficient consideration for note.**

Compromise of a disputed claim constitutes a sufficient consideration for a note, even though claim be doubtful and might ultimately have been defeated.

In Error to the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Action by H. H. Wickham and others against M. A. Hoyt, Jr. Judgment for plaintiffs, and defendant brings error. Affirmed.

Robert Healy, of Ft. Dodge, Iowa (Charles D. Goldsmith, of Sac City, Iowa, on the brief), for plaintiff in error.

C. A. Helsell, of Ft. Dodge, Iowa (Samuel G. Pickus, of Sioux City, Iowa, and Helsell, Helsell & McCall, of Ft. Dodge, Iowa, on the brief), for defendants in error.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge. Defendants in error, plaintiffs below, are copartners, under the firm name and style of Beach-Wickham Grain Company, and citizens and residents of the state of Illinois, doing a grain commission business as members of the Board of Trade of Chicago in that state. They will be hereafter designated as plaintiffs. Plaintiff in error, hereinafter designated as defendant, is a citizen of the state of Iowa, residing at Carroll, in that state. October 29, 1925, plaintiffs filed in the District Court of the United States for the Northern District of Iowa their application for the recovery against defendant of $4,712.01, evidenced by a promissory note dated April 21, 1925, together with interest and attorney's fees, as in said note provided.

The original answer admitted the citizenship of the parties and the execution of the note, but denied consideration and alleged that said instrument was "executed and delivered for an illegal and unlawful purpose." By amendment the further defense was interposed that plaintiffs maintained and operated, at Carroll, Iowa, a bucket shop, as defined in the Iowa Code (Code 1927, § 9899); that prior to the execution of the note in suit plaintiffs and defendant engaged in acts and transactions forbidden and prohibited thereby; that these transactions resulted in a claim of indebtedness from defendant to plaintiffs in the sum evidenced by the note in suit; that said transactions were gambling contracts,

which, under the laws of Iowa, were void and unenforceable; that theretofore plaintiffs had instituted a suit in the district court of Carroll county, Iowa, to recover upon said alleged indebtedness; that after the service of said notice of suit defendant signed his name to the instrument upon which this action was brought.

In their reply plaintiffs denied that the note was executed and delivered for an illegal and unlawful purpose; alleged that it was given for a good and valid consideration, to wit, for an agreed balance owed by defendant to plaintiffs as commissions earned for buying and selling grain for the defendant on the Board of Trade of Chicago, Ill., at his instance and request; that by reason of defendant's refusal to pay said balance plaintiffs retained counsel, who prepared the notice of suit referred to in defendant's answer; that this notice was served on defendant March 31, 1925, and the petition in said suit was prepared and ready for filing; that as a result of negotiations between the parties the claim and controversy were mutually compromised and settled at the amount of the note in suit on or about April 21, 1925, and upon reaching said mutual compromise and settlement the defendant voluntarily made, executed, and delivered to the plaintiffs the note declared on; that thereupon plaintiffs discontinued said suit, paid their attorney for his services in bringing the same, and accrued costs.

The reply further alleged that the contracts entered into by the defendant through plaintiffs for the purchase and sale of grain on the Chicago Board of Trade were to be performed and the grain was to be delivered at the city of Chicago in the state of Illinois; that said contracts were legal and valid under the laws of the state of Iowa, and in accordance with the rules and regulations of the Chicago Board of Trade; that the transactions contemplated by said contracts constituted interstate commerce, and were and are governed by the statutes of the United States and the rules and regulations of the Interstate Commerce Commission.

At the conclusion of the testimony counsel for plaintiffs moved for a directed verdict in their behalf. The court was of the view that plaintiffs had made full proof under the allegations of their petition and that the testimony of defendant failed to establish the defenses pleaded. Its ruling, however, was based upon its opinion that the testimony, taken as a whole, showed a settlement and compromise at the time of the delivery of the note; that, because of this, the suit, which

had been instituted, was discontinued and an extension of time given, as evidenced by the date of maturity of the note in suit. Plaintiffs' motion for a directed verdict was sustained. Judgment was entered for the amount of the note, with accrued interest and for costs.

The main contentions of defendant Hoyt are that he dealt directly with Githens & Nelson, local grain brokers at Carroll, Iowa, through whom the trades were placed with the plaintiffs; that Githens & Nelson had failed to comply with certain of the bucket shop sections of the Iowa statutes, thereby rendering the note in suit void under the Iowa law; that the theory of plaintiffs was that all the transactions involved were governed by the so-called Grain Futures Act of September 21, 1922 (42 Stat. 998, U. S. Comp. St. 1923 Supp. § 2825 [7 USCA §§ 1–17]); that the burden was imposed upon plaintiffs to establish the legality of the transactions under that act, and they had failed so to do; that the note in suit was for the alleged illegal consideration; that therefore the institution and discontinuance of the former action in the state court, which resulted in the giving of the note in suit, raise no estoppel against defendant. Defendant also insisted that there was no evidence of diversity of citizenship. This claim, however, is foreclosed by the admissions in his answer.

In a letter of April 10, 1924, written on the letterhead of the Beach-Wickham Grain Company, 332 South La Salle street, Chicago, F. F. Githens announced to the trade that he, together with Mr. L. J. Nelson, was about to enter upon the grain brokerage business at Carroll, Iowa; that they had made arrangements for service on the private wire circuit of the Beach-Wickham Grain Company; and that for this reason they would be in position to give the best of service at Chicago and other points outside of Iowa. While it is true that defendant made his trades in grain through Githens & Nelson, nevertheless the transactions were conducted directly with plaintiffs. The correspondence in evidence makes this plain. Githens & Nelson were independent brokers. Plaintiffs were not engaged in the brokerage business in Iowa. In Mullinix v. Hubbard, 6 F.(2d) 109, we held that orders placed in Arkansas and at Memphis, Tennessee, for the purchase and sale of cotton on the New York Cotton Exchange for future deliveries were direct contracts with the New York brokers through whom the cotton was purchased. This would be true, whether the party through whom the orders are placed is agent or independent broker,

whose acts bring about the ultimate contractual relation.

The purchases and sales on the Chicago Board of Trade were made by plaintiffs. Accounts of sales and confirmations were transmitted directly from plaintiffs to defendant. April 24, 1924, plaintiffs wrote defendant as follows:

"Mr. M. A. Hoyt, Carroll, Iowa—Dear Sir: We inclose herewith confirmation of 10 Sept. wheat bought for you to-day at 1.06. * * * We are very glad indeed to get an account opened with you, and hope it will be profitable to you."

And again on the same day:

"M. A. Hoyt, Carroll, Iowa: We have this day made the following trades for your account:

| Bought of | Quantity. | Delivery. | Property. | Price. |
|---|---|---|---|---|
| Bartlett Fr. Co. | 10 | Sept. | Wht. | 106 |

Sold to

"Orders good only for the days which they are given, unless specified.

"These transactions are made subject to the rules and customs of the Exchange at the place of contract, and the right is reserved to close the transactions when the funds are exhausted, or nearly so, without giving further notice.

"We solicit and will receive no business, except with the understanding with our customers that in all cases the intent to receive and deliver property bought and sold by us is contemplated and understood.

"Yours truly,
"Beach-Wickham Grain Co.
"Chicago, April 24, 1924."

The foregoing are samples of numerous communications of the same general nature. Defendant wrote letters to plaintiffs. He knew through this correspondence, and through Githens & Nelson, that he was trading with plaintiffs. He testified that these confirmations of trades he made through plaintiffs were sent to him by the Beach-Wickham Grain Company through United States mail in sealed envelopes. They were all made out on the stationery of plaintiffs. The evidence is conclusive that defendant knew he was dealing with plaintiffs on the Chicago Board of Trade.

[1] This being true, the contracts executed on the Chicago Board of Trade are governed by the law of that jurisdiction; whether by the state law of Illinois or the Federal Grain Futures Act is immaterial. The law of Iowa does not control, and the alleged failure of Githens & Nelson to observe certain provisions of that law is immaterial, both upon this ground and upon the further ground that the contracts of purchase and sale were between defendant and plaintiffs.

The court suggested that in its opinion the burden was upon defendant to prove that the transactions were gambling contracts, and that defendant had failed to carry this burden. Defendant's evidence was to the effect that when, for example, he bought corn for September delivery, he sold an equal amount for September delivery before the 1st of September. He says:

"I did that to close the deal. By selling a future against it they couldn't deliver any grain to me. And the reason they couldn't deliver any was because when I bought a certain amount I sold exactly the same amount before the date for delivery arrived. I sold against it to close the deal out."

[2] In other words, that it was never his intention to deliver or receive any of the grain involved in these transactions. This falls far short of establishing the existence of a gambling contract, whether under the law of Iowa, Illinois, in federal jurisdictions generally, or the provisions of the Grain Futures Act. In Mullinix v. Hubbard, supra, we said:

"As already stated, there was no delivery on any of these contracts, but before delivery dates were due they were all closed out by the lawful, customary and generally prevailing methods permitted by the rules and regulations of the exchange and its clearing house, and Bryant's intention when he made his contracts that they should be closed out in that way did not render them wagering contracts. Gettys v. Newburger [(C. C. A.) 272 F. 209] supra. The statutory prohibition is aimed only at the inception of these transactions, if that be lawful no further legislative concern about the contracts and the relation of the parties is manifested. As said in the Fortenbury Case [47 Ark. 188, 1 S. W. 58]: 'Certainly the Legislature did not intend to impose any restrictions upon the legitimate commerce but only to destroy the parasite that infects it.'"

See Gettys v. Newburger (C. C. A.) 272 F. 209; Fortenbury v. State, 47 Ark. 188, 1 S. W. 58.

The fact that a customer does not intend to receive or deliver the actual commodity bought or sold does not make his trades gambling transactions, if his intention in that respect is not disclosed to the brokers. Browne v. Thorn (C. C. A. 8) 272 F. 950, affirmed 260 U. S. 137, 43 S. Ct. 36, 67 L.

Ed. 171; Mullinix v. Hubbard (C. C. A. 8) 6 F.(2d) 109; Lamson Bros. v. Mensen, 187 Iowa, 972–975, 174 N. W. 688; Harper & Ward v. Kurtz, 188 Iowa, 1047, 175 N. W. 45. The Illinois cases are all to the same effect.

Counsel for defendant claim, however, that by their reply plaintiffs undertook to establish a valid contract under the Federal Grain Futures Act; that the burden was on plaintiffs so to do, and that in this they failed. The provisions of the Grain Futures Act invoked are the following:

"It shall be unlawful for any person to deliver for transmission through the mails or in interstate commerce, by telegraph, telephone, wireless, or other means of communication, any offer to make or execute, or any confirmation of the execution of, or any quotation or report of the price of, any contract of sale of grain for future delivery on or subject to the rules of any Board of Trade in the United States, or for any person to make or execute such contract of sale, which is or may be used for (a) hedging any transaction in interstate commerce in grain or the products or by-products thereof, or (b) determining the price basis of any such transaction in interstate commerce, or (c) delivering grain sold, shipped, or received in interstate commerce for the fulfillment thereof, except—

"(a) Where the seller is at the time of the making of such contract the owner of the actual physical property covered thereby, or is the grower thereof, or in case either party to the contract is the owner or renter of land on which the same is to be grown, or is an association of such owners, or growers of grain, or of such owners or renters of land; or

"(b) Where such contract is made by or through a member of a Board of Trade which has been designated by the Secretary of Agriculture as a 'contract market,' as hereinafter provided, and if such contract is evidenced by a record in writing which shows the date, the parties to such contract and their addresses the property covered and its price, and the terms of delivery: Provided, that each Board member shall keep such record for a period of three years from the date thereof, or for a longer period if the Secretary of Agriculture shall so direct, which record shall at all times be open to the inspection of any representative of the United States Department of Agriculture or the United States Department of Justice."

[3, 4] It is conceded that plaintiffs were members of the Chicago Board of Trade and that said Board of Trade had been designated by the Secretary of Agriculture as a contract market. The failure of proof assigned is that there was no competent evidence that any of the contracts involved was evidenced by a record in writing which showed the date, the parties to such contract, their addresses, the property covered, and its price, and the terms of delivery; that the confirmation sent by plaintiffs to defendant do not constitute a sufficient compliance with exception (b) in section 4 of the Grain Futures Act (7 USCA § 6 [b]). Conceding, without deciding, this to be true, it is to be observed that the burden was upon defendant to prove that the trades made were gambling transactions. This burden was not transferred to plaintiffs by the allegation in its reply that the purchases and sales of grain by defendant through the plaintiffs on the Chicago Board of Trade were governed by the statutes of the United States and by the rules and regulations of interstate commerce.

However, the decision below was not based finally upon the view that the original transactions were valid, nor is it necessary that our conclusion should be thus limited. In his answer defendant alleged that the indebtedness claimed arose out of gambling transactions in grain and that the note in suit was without other consideration. In their reply plaintiffs set up the prior legal proceedings instituted in the state court; that as a result thereof a compromise was effected whereby these proceedings were discontinued, and the note forming the basis of this action was executed. The effect of this compromise was to extend the time of payment for a period of six months, to wit, to October 1, 1925; that defendant was thereby estopped to plead or prove the defenses set forth in his answer. It was upon this issue that the trial court based its decision, and, we think, correctly.

Under the Iowa statute an action is deemed commenced when service of the original notice upon the defendant has been made. Code Iowa 1927, § 11055. The notice of suit in the state court was placed in the hands of the sheriff and served on March 31, 1925. By that notice the defendant was required to appear at the May 1925, term of that court, which commenced at Carroll, Iowa, May 11, 1925. The compromise was consummated on April 21, 1925, the date of the execution of the note in suit. It appears without contradiction that the claim of plaintiffs, if valid, had accrued and was due and payable at the time the suit in the state court was instituted. It further appears that by the terms of the note payment was extended to October 1, 1925. This, in itself, was a substantial consideration moving to the defendant. Fur-

thermore, as has been stated, defendant conceded that plaintiffs were members of the Chicago Board of Trade, and that said Board is a designated contract market. The purchases and sales of grain were executed by plaintiffs for defendant upon that Board of Trade. Defendant claims only that in the trial of this case plaintiffs had failed to prove that they kept the written record required by the Grain Futures Act; but at the time the suit was filed in the state court the inability of plaintiffs to produce such proof was certainly not established. Successful defense was at the best doubtful. Defendant was evidently of this view and accepted the compromise pleaded. It is unimportant that the note in suit is for the same amount as that originally claimed, or whether any extension of the time of payment ,resulted from the compromise.

"The actual ending of a controversy and avoiding of threatened litigation is always a sufficient consideration for a settlement agreement, even if one side concedes ,the whole matter in dispute." High Gravity Oil Co. v. Southwestern Petroleum Co. (C. C. A.) 290 F. 370.

"Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained." Hennessy v. Bacon, 137 U. S. 78, 11 S. Ct. 17, 34 L. Ed. 605.

See Williams v. First National Bank, 216 U. S. 582, 30 S. Ct. 441, 54 L. Ed. 625; Northern Liberty Market Co. v. Kelly, 113 U. S. 199, 5 S. Ct. 422, 28 L. Ed. 948.

[5] In this compromise the parties acted in good faith. Such a compromise of a disputed claim is a sufficient consideration for a note even though the claim be doubtful and might ultimately have been defeated. This is the established rule in Iowa. Rowe v. Barnes, 101 Iowa, 302, 70 N. W. 197; First Nat'l. Bank v. Browne, 199 Iowa, 981–984, 203 N. W. 277; Keefe v. Vogle, 36 Iowa, 87; French v. French, 84 Iowa, 655–660, 51 N. W. 145, 15 L. R. A. 300; Shaw v. C., R. I. & P. Ry. Co., 82 Iowa, 199–203, 47 N. W. 1004; Zimbelman v. Finnegan, 141 Iowa, 358, 118 N. W. 312. In the latter case it is said:

"An agreement [for extension] will be implied if the debt is then due, and the note is made payable at a future day. * * * That there may be an implied agreement from such circumstances as are shown in this case is abundantly established by the authorities. See those heretofore cited and Boyd v. Freize, 5 Gray (Mass.) 553."

These remarks apply to the case at bar.

Cases cited by counsel for defendant support this rule. In Kennedy v. Welch, 196 Mass. 592, 83 N. E. 11, the court said:

"But there is a clear distinction between the adjustment of a pending suit to enforce a liability the outcome of which may be reasonably doubtful, and a suit brought upon an illegal demand, which the courts will not lend their aid to enforce [citing cases]. In the first instance, the consideration, which may be and often is inadequate, is supported by the compromise, even if the original claim upon trial might have been found invalid."

In 8 C. J. 238, par. 374, the text-writer says:

"The discontinuance or the withdrawal of legal proceedings is a sufficient consideration, even though the original action might have failed, if it was brought in good faith, or although it was afterward determined that there was no cause of action."

And again, in 13.C. J. 346, § 197:

"The principle followed in perhaps the majority of cases is, that one has a right to sue where his claim is reasonably doubtful and that forebearance to enforce a claim which might reasonably be thought doubtful is a sufficient consideration on the ground that the reality of the claim which is given up must be measured not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time is to judge and make the concession."

Our conclusion is that the compromise effected was made in good faith; that the claim was, at most, a doubtful one, and not invalid on its face, or within the knowledge of plaintiffs who made the concession; that whatever may be the nature of the transaction between plaintiffs and defendant upon the Chicago Board of Trade, the note in suit, as a result of the compromise made, is not subject to the defenses pleaded. Regardless of the question of the validity of the original transaction, such a settlement estops both parties from any further litigation of the matter in dispute. Hackney v. Bock, 212 Ill. App. 497; Grant v. Chambers, 30 N. J. Law, 323.

As said by counsel for defendant in error in their brief:

"There is no evidence in the present case on which to base the claim that the transaction was a gambling one, but, even if there were, it would be nothing more than a disputed claim, which might properly be settled, and which was in fact settled by the compromise of the suit brought in the state court at Carroll."

The judgment below was right and should be affirmed.