## MADDOX v. PEACOCK.

### 4 Div. 699, 699–A.

Supreme Court of Alabama.

Dec. 21, 1933.

Rehearing Denied Jan. 18, 1934.

C. L. Rowe, of Elba, for cross-appellee and appellant.

Beck & Yarbrough, of Enterprise, for cross-appellant and appellee.

KNIGHT, Justice.

The bill in this cause was filed by C. C. Peacock, appellee and cross-appellant here, against the appellant, J. W. Maddox, seeking to enjoin the foreclosure of a mortgage executed by appellee and wife to appellant on the 4th day of May, 1928. The bill also prayed for the ascertainment of the balance due on the mortgage, if any, and to be let in to redeem; for an accounting between the complainant and the respondent in the matter of the partnership theretofore existing between the said Peacock and Maddox; to ascertain what amount, if any, was due by the respondent to the complainant as his share of the profits of the said partnership; and to ascertain what amount, if any, was due by the respondent to the complainant on a final accounting and adjustment of all matters, including said mortgage indebtedness and said partnership business between the complainant and respondent.

On the filing of the bill, the chancellor ordered temporary injunction to issue, restraining the respondent from foreclosing the mortgage, in accordance with the prayer of the bill.

The respondent, Maddox, answered the bill, and at its conclusion prayed that his answer be taken and treated as a cross-bill. In his cross-bill, the cross-complainant prayed for the foreclosure of the mortgage and the allowance of reasonable counsel fees, as provided in the instrument.

Thereafter, upon submission, the court entered a decree adjudging that the complainant was entitled "to relief to the extent of a dissolution of the partnership and a settlement of its affairs by a decree of the court," and was "entitled to have the amount due on the mortgage by complainant to respondent and described in the bill ascertained by the court." To that end the matters were referred to the register to hold reference, and report his findings and conclusion thereon to the court. This reference was held, and much testimony was offered by both parties.

The register on May 5, 1932, filed his report in the cause, together with all the testimony offered by both sides on the reference.

The register's report first deals with the partnership affairs, and accounts by and between the parties. This report shows that the said partnership operated during the years 1927, 1928, and 1929; that there had been a settlement between the parties for the year 1927; that said partnership during said year earned a profit; that each of the partners received in cash therefrom the sum of $750, "which with some other small items balanced the books of the partnership for the season of 1927"; that, "after the close of the 1927 business," respondent, Maddox, furnished the partnership money to the amount of $29,040.19, and was repaid by the partnership on this amount the sum of $28,226.79, so that, when the business was wound up and closed, a balance of $813.40 was ascertained by the register to be due by the partnership to said Maddox. In concluding his report involving the partnership matters, the register stated: "I therefore find that there were no profits in the partnership account, to which the complainant is entitled; and of course, find that he is entitled to no credits on his mortgage indebtedness by reason of his interest in the partnership."

As to the status of the mortgage, dated May 4, 1928, the register found that the amount secured thereby was $4,284.51 (which included the original amount of $4,191.05, and certain other items of $24.65, $9.25, and $59.56, the mortgage by its terms secured additional advances). This is the land mortgage.

The register found, and so reported, that the said Peacock was entitled to credits against the said mortgage indebtedness amounting in the aggregate to $3,205.24, thus leaving a balance still due and unpaid on said mortgage of $1,079.27, and interest on the balance from October 1, 1928, to date of the report, of $316.62, and an attorneys' fee of $139.58, making a total due on the mortgage of $1,535.47.

It also appears from the evidence in the case, and from the report of the register, that, in addition to the land mortgage dated May 4, 1928, the said Peacock also executed to the said Maddox on the 13th day of May, 1929, a personal property and crop mortgage, to fall due on October 1, 1929, in the sum of $500, but which by its terms secured any additional amounts that might be advanced by Maddox to Peacock. The register reported that, after allowing the said Peacock two designated credits, the balance remaining unpaid on said mortgage, including interest of $73.52, to date of report, and attorneys' fee of $41.80, was $459.89.

The complainant Peacock duly filed a number of exceptions to said report. Among them, the complainant excepted to the report for its failure to allow him, on his personal account for 1928, a credit for $1,285.90, proceeds of a car of guano on May 12, 1928; and complainant also excepted to the report in charging the partnership with certain amounts paid by Maddox to A. E. Pierce & Co. of New Orleans for losses on certain

680

dealings in cotton on the New Orleans Cotton Exchange. These amounts aggregate $2,022.78. There were other exceptions, which we do not deem it necessary to here mention.

The chancellor, on submission, sustained the complainant's exception as to the failure of the register to allow the complainant a credit for the $1,285.90 item (guano). The court allowed the complainant this credit, but charged the complainant with the following items: May 7, 1928, $24.65; June 2, 1928, $9.25; July 18, 1928, $59.56; and March 9, 1929, $50, totalling $143.46. However, the register's report allowed Maddox all of said credits except the item of $50. These items the chancellor held should be included in the land mortgage, making the total amount of the debt $4,334.51. Otherwise the chancellor sustained the conclusions of the register as to the amounts secured by the two mortgages. The court allowed the complainant, in addition to the credits reported by the register, a further credit, as above pointed out, of $1,285.90.

We may say here, in passing, that we fully concur with the chancellor that the mortgage executed May 4, 1928, covered all items of indebtedness owing by the complainant at that time to the respondent, Maddox, and that all then existing indebtednesses were carried into this mortgage.

The complainant, Peacock, complains here, as he did before the chancellor, that the amounts paid to A. E. Pierce & Co. of New Orleans, on account of losses resulting from the purchase, or sale, of cotton on "the board," should not have been charged against the partnership. The chancellor, while expressing some doubt as to the legality of the cotton transactions, sustained the report of the register in holding that the money so lost was chargeable against the partnership, expressing his views as follows: "Yet, if the complainant agreed to the charge, I don't think he can raise the question here. The question of fact as to such agreement was decided by the register in favor of the respondent. His decision as to this will not be disturbed. The register also found that the partnership losses amounted to the sum of $813.40."

■ We have carefully considered the evidence, with reference to the so-called future contracts had with A. E. Pierce & Co., by Maddox for the partnership, and have concluded there is ample evidence in the record to sustain the finding that the complainant was fully aware of the dealings at the time, that he sanctioned the same, knew of the losses, and was a party to the transaction, though carried on in the name of Maddox. Even if it were conceded that these transactions were illegal, but nevertheless were carried on with the approval and consent of the complainant, we do not think the complainant would be in position to ask this court to saddle the entire loss on his partner. Each would stand in pari delicto. The court would, in that event, aid neither. But, under the evidence, were such dealings illegal? See South Carolina Cotton Growers' Co-op. Ass'n v. Weil et al., 220 Ala. 568, 126 So. 637; U. S. v. New York Coffee & Sugar Exch., 263 U. S. 611, 44 S. Ct. 225, 68 L. Ed. 475; Browne v. Thorn, 260 U. S. 137, 43 S. Ct. 36, 67 L. Ed. 171; Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 S. Ct. 637, 49 L. Ed. 1031; Allen v. Sams, 31 Ga. App. 405, 120 S. E. 808; Furrh v. W. U. T. Co., 115 Tex. 125, 276 S. W. 645.

Our consideration of the evidence in the cause convinces us that the decree of the court was correct in charging the losses, in the matter of the dealings with A. E. Pierce & Co., to the partnership, and that the complainant has no just ground for complaint.

Upon original consideration, the writer interpreted appellant's brief as insisting that the credit of $1,285.90 should have been applied first to the payment of the personal property mortgage, and treated the same from that standpoint. However, upon application for rehearing, counsel for appellant makes clear that his brief, on this point, had been misconceived, that he made no insistence that the payments should be first applied to the discharge of the personal property mortgage, but that his contention was the credit of $1,285.90 should have been applied to the payment of the demand note of $1,237.50. Perhaps we should stand corrected in this particular, and we have reconsidered the case in the light of appellant's said contention. But, so considered, the result is the same.

■ We are still in full agreement with the court below that the mortgage executed by the complainant and wife to the respondent on May 4, 1928, was intended to cover, and did in fact include, all items of indebtedness of the complainant to the respondent at the time of the execution of the same. We are also in agreement with the lower court in holding that the complainant was entitled to the credit of $1,285.90 for guano, as of May 12, 1928, and that this item was properly credited to the payment pro tanto of the mortgage dated May 4, 1928.

It only remains to be said that we are here in full accord with the views of the chancellor, as expressed in his opinion and decree, and it follows that the decree appealed from will be affirmed on direct as well as cross appeal.

Affirmed on both direct and cross appeal.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.