## No. 10,917.

## SACKVILLE v. WIMER.

Decided February 2, 1925.

Action for conversion.  Judgment for defendant.

### Affirmed.

1.  BROKERS—*Margins—Conversion.*  In a purchase of stock on margin by a broker for a customer, title at once vests in the customer, and where the broker is unable to deliver stock on demand, the customer is not obliged to tender the balance due, but may sue for conversion.

2.  *Stock Sales—Conversion.*  Where a broker sold stock to a stranger on the partial payment plan, the stock to be delivered on completion of the payments, which were never made, the stock did not become the property of the purchaser, and an action of conversion on the theory that he was the owner of the stock, would not lie.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. CARL CLINE, Mr. ERNEST BURCK, for plaintiff in error.

Mr. J. W. KELLEY, JEAN KELLEY, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action by the plaintiff Sackville against N. A. Wimer, in his individual capacity, for converting to his own use certain certificates of corporate stock alleged to be the property of the plaintiff.  The plaintiff's theory of the action is, to establish which his evidence was directed, that a corporation, Wimer & Company, of which the defendant is president, being at the time engaged in the

business of a stock broker, bought for the plaintiff, its customer, certain certificates of stock on the partial payment plan, the first payment in cash having been made, the balance to be paid in twenty equal monthly installments. Upon the plaintiff's failure to pay one of the installments and interest, the time for payment thereof being extended and plaintiff not having paid at the end of that time, the defendant sold the stock on his own acount on a rising market. The plaintiff's 'contention is that the transaction in question, being a purchase by a broker for his customer on the partial payment plan, the transaction was, in substance, a purchase on margin and, being so, the stock became the plaintiff's stock at the time of purchase, and that as defendant could not sell for a failure of the customer to pay additional installments, except on a falling market, the sale of the stock was a conversion of plaintiff's property for the value of which at the time of the conversion he is entitled to damages. Plaintiff invokes the usual rule that in a purchase on margin by a stockbroker for a customer, the title of the stock at once vests in the customer and that the broker may only sell on a falling market in case the customer refuses to pay the balance of the purchase price, or keep his margin good, and that where the broker sells the stock and cannot deliver other stock of the same kind, the customer upon demand for delivery, is not obliged to tender to the broker the balance due but may sue for conversion.

If it be assumed, as we do, that in a case such as plaintiff says this transaction was, and that under such decisions as *Richardson v. Shaw*, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; *Skiff v. Stoddard*, 63 Conn. 198, 216, 26 A. 874, 28 A. 104, 21 L. R. A. 102; *Tuckerman v. Mearns*, 262 F. 607, 49 App. D. C. 153; *Little v. McClain*, 134 App. Div. 197, 118 N. Y. S. 816; *Barbour v. Sproul*, 239 Pa. 171, 179, 86 A. 714; *Sproul v. Sloan*, 241 Pa. 284, 88 A. 501, Ann. Cas. 1915B, 941; *Content v. Banner*, 183 N. Y. 121, 76 N. E. 913, 6 Ann. Cas. 106; and *Markham v. Jaudon*, 41 N. Y. 235, perhaps the leading case,

an action in conversion lies, still upon the findings of fact by the trial court, which are sustained by the evidence, no such case has been made here as requires the application of the rules laid down in these cases. The difficulty with the plaintiff's theory is that the facts as found by the trial court do not support his theory. Disregarding the objection of the defendant that whatever action the plaintiff has, if any, is against the corporation and not against its president, and for our purpose assuming that the decision should be as if the corporation itself was defending, the judgment of the court dismissing the action must be upheld.

The court in its findings first held that if the evidence sustained the plaintiff's theory that the purchase was by a broker for a customer, and the stock was converted, the separate defense of accord and satisfaction interposed by the defendant was established. Defendant's defense, in substance, was, and the evidence tends to establish it, and we cannot interfere with the court's finding in that particular, that if the stock was not delivered to the plaintiff, but was sold by the defendant, there was an accord and full satisfaction under a settlement arrived at by the parties by which the plaintiff received the promissory note of the defendant corporation for a certain sum as full compensation for all the damages which he claimed he had sustained by the alleged wrongful sale of the stock by the defendant, which promissory note the plaintiff still holds and which the corporation that sold the stock is ready at any time to pay and discharge, on demand, but plaintiff refuses to demand, or sue upon it.

The court also found that the transaction was not one between a broker and his customer for the purchase of stock on a margin, or on the partial payment plan, but was an absolute contract of sale or sale by Wimer & Company, a corporation of which the defendant was president, of its own stock to the plaintiff at an agreed purchase price on which a partial payment was made, other payments to be made in the future, none of which payments the plaintiff

has made and no sufficient excuse furnished for not making them. The court further found that by the contract of sale the stock was not to be delivered until all these payments were made, unless in the meantime the plaintiff desired to sell the stock, at which time it could be sold and payment of the balance remaining unpaid then made or deducted from the sale price of the stock and the difference or profit of the plaintiff paid to him. The court also found specifically that the first payment was not in the nature of a margin, but it was a payment of one-fifth of the purchase price, and the stock was to be delivered only upon full payment of the twenty monthly installments or by an intermediate sale and settlement as stated. The court further specifically found that the contract was with the plaintiff and the corporation and Wimer acted merely as the agent of the company. The court further found that the plaintiff at the time the defendant sold the stock, knowing of it, made no demand for it, neither did he offer to pay any of the monthly installments due, but acquiesced in some sort of a concession or delay in the matter, and thereafter made no further tender of monthly payments and later demanded the stock without any payment or tender of payment of the balance due.

The contract of sale, therefore, was one not by a broker for a customer; on the contrary, it was a sale by an owner of stock to one not the seller's principal, but to a stranger for a stated consideration, part of the purchase price being paid at the time of sale, other payments to be made monthly, and delivery to be made and title to pass only upon full payment of the purchase price. The evidence warranted this conclusion of the court. At no time was this stock the property of the plaintiff. Therefore it could not be converted by the defendant. If such damages as the plaintiff sustained by failure of defendant company to deliver might be recovered in an appropriate action against the seller, unless something subsequent to the sale has intervened or occurred to discharge liability, an action

of conversion upon the theory that the plaintiff is the owner of the stock will not lie.

The judgment is, therefore, affirmed.

Mr. Chief Justice Allen and Mr. Justice Sheafor concur.