### Sargent v. Whitfield & Company et al.

(Decided December 11, 1928.)

#### Appeal from Christian Circuit Court.

1. Brokers.—Where stocks were delivered by customer to broker as collateral security for stocks purchased on margin, broker acquired no property right in collateral stocks, but was under duty to return stocks to customer when specific purpose for which they were delivered was accomplished, and receiver of insolvent broker was required to return collateral stock.

2. Receivers.—Receiver stands in shoes of insolvent company, and his rights can rise no higher than source from which they spring.

3. Appeal and Error.—In suit to recover securities placed with broker as collateral to secure purchase of stock on margin, contention that transaction was gambling not pleaded nor proved nor raised in record is not available on appeal.

4. Brokers.—Purchase by customer through broker of stocks on margin and transfer of other stocks as security therefor held legitimate business deal.

5. Brokers.—Relation between customer and broker, with reference to stocks purchased through broker on margin and stock sep-

arately pledged with broker to protect margin, is that of pledgor and pledgee, and customer does not part with title to stock, but broker merely has lien thereon as security, and on payment of debt secured customer is entitled to delivery of his stock.

6. Brokers.—Title of customer to stocks pledged with broker as collateral security for stock purchased on margin held not lost by permitting broker to use, sell, or repledge securities.

7. Brokers.—When securities are pledged with broker to secure broker against loss, he must keep them or others of same amount and kind with which to return pledge when debt is paid.

8. Corporations.—Certificate of stock in and of itself is not property, but mere evidence of right which stockholder has.

9. Brokers.—Authority of agent to deal with certificates of stock pledged by customer with agent does not confer title on agent, nor affect obligation to deliver so many shares of stock when conditions of pledge are met.

10. Brokers.—Where customer delivered shares of stock to broker as collateral security for stock purchased on margin, and collateral stock was repledged with another broker with right to substitute other securities, and collateral stock of same amount and kind, though not identical certificates, were returned to first broker on payment of debt secured, receiver of first broker was under duty to return such stock to customer and could not assert title thereto because they were not identical certificates pledged.

11. Brokers.—On purchase of stock on margin or pledge of other stock to secure margin, relation of debtor and creditor arises between customer and broker as to loan of money or credit advanced by broker to pay portion of purchase price, but stock purchased or pledged belongs to customer, who is entitled to earnings or profits and must bear any losses that may result, and broker retains only lien to secure what may be due him.

JOHN C. DUFFY for appellant.

BREATHITT & BREATHITT for appellee Whitfield & Co.

M. D. GRUBBS for appellee Claude Bass.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Andrew Sargent sued the receiver of Whitfield & Co., an insolvent brokerage concern, to recover certain securities found in the hands of the receiver. The latter denied the right of Sargent to recover and asserted that the securities constituted assets of the insolvent concern. The circuit court dismissed Sargent's petition, and he appeals.

Whitfield & Co. conducted a brokerage office at Hopkinsville, Ky. It was not a member of any stock exchange,

but had an arrangement with Thompson & McKinnon, members of several exchanges, by which orders were executed by Thompson & McKinnon in the name of Whitfield & Co. for their customers. A leased wire was maintained in the office of Whitfield & Co., which afforded direct connection with Thompson & McKinnon and secured prompt service in the transaction of the business. Thompson & McKinnon kept an account with Whitfield & Co., but did not know the individual customers of the latter or keep any separate record of their dealings. Whitfield & Co. kept a record of their transactions with their own customers.

In September, 1926, Sargent placed an order with Whitfield & Co. to purchase at the market price 100 shares of stock of the Northern Pacific Railway Company and a like number of shares of the Schubert Theatre Corporation. The orders were telegraphed to Thompson & McKinnon and immediately executed. The purchases were made on margin. Sargent signed in blank and put up with Whitfield & Co. 100 shares of class B stock in the Hartman Corporation, 40 shares of preferred stock in the Cities Service Company, and 10 shares of stock of Dodge Bros. All the stock thus pledged belonged to Sargent. Whitfield & Co. was authorized to place the pledged stock with Thompson & McKinnon as collateral security to protect the margins on Sargent's purchases of the Northern Railway and the Schubert Theatre stocks. Shortly thereafter, at the request of Whitfield, Sargent put up, as additional security, 10 shares of Dodge Bros. preferred stock. Whitfield & Co. then gave Sargent a statement showing that they held the above stock for him. The 200 shares purchased on margin were so indicated, and the other stocks were held as security to protect the brokers against a decline in price on either or both of the stocks purchased on margin. The stocks appeared in the same way on the records of Thompson & McKinnon, but were held in the name of Whitfield & Co. Whitfield, who was the dominating factor in his firm, disappeared within a few days after the transaction and has not been found. It soon developed that the brokerage firm of Whitfield & Co. was insolvent, and a receiver was appointed to wind up its affairs. The stocks purchased on margin were sold, and the proceeds arising from the sale were more than sufficient to extinguish the claims of Thompson & McKin-

non, and thereby the collateral stock was released and returned to the receiver. After payment of the amount due Thompson & McKinnon, a balance remained due representing dividends and profits on the stock purchased on margin, and this balance, in connection with a balance arising on trades in grain, was remitted to the receiver. The identical stock certificates delivered by Sargent were not returned, but other certificates for the same number of shares in the same corporations were returned by Thompson & McKinnon. The receiver insists that the stocks belong to Whitfield & Co. and should be distributed among its creditors. On the other hand, Sargent claims that the stocks belong to him and were put up merely as a security to protect his margin on stocks purchased, and, when the debt was paid, he was entitled to a return of his property. It is at once apparent that the receiver's claim is barren of any equity. Whitfield had no money invested in the stocks and obtained no money on the faith of his possession of them. The stocks were delivered to and used by him for a specific purpose, and when that purpose was accomplished, it was his duty to return the stocks to the rightful owner. These stocks represent no property right of Whitfield, and none of the assets of the defunct concern were invested in them. The receiver has no right to require the assets of the insolvent firm to be augmented by a conversion of the property of Sargent. Sargent's stocks can be restored to him without depleting the insolvent estate and without detriment to any rights of its creditors. The receiver stands in the shoes of Whitfield & Co., and his rights can rise no higher than the source from which they spring. 23 R. C. L. sec. 60, p. 56; 34 Cyc. p. 388; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981.

Counsel for appellee base their argument in support of the judgment of the lower court upon various contentions. It is asserted that the arrangement between Sargent and Whitfield & Co. was a gambling transaction, and that Sargent could not invoke the aid of a court of equity to assist him in transactions of that type. It is further said that the relation between Sargent and Whitfield was that of creditor and debtor, and, since the identical certificates of stock delivered to Whitfield & Co. were no longer in their possession, the identity of the property had been lost, so that no lien thereon or trust therein could be enforced.

The suggestion that the transaction was a gambling one may be put aside without extended discussion. There is neither pleading nor proof upon which that contention could be rested, and it was not raised in the record. In the absence of a pleading presenting a question, it is not available on appeal. Cucullu v. Hernandez, 103 U. S. 105, 26 L. Ed. 322; Pratt v. York, 197 Ky. 846, 248 S. W. 492; Insurance Co. v. Gore, 215 Ky. 487, 284 S. W. 1107; Bellamy v. Krebs, 213 Ky. 373, 281 S. W. 187; Wright v. Wheat, 224 Ky. 386, 6 S.W.(2d) 458.

The transaction was a legitimate business deal, of a kind carried on daily on a large scale and the subject of substantial property rights with which the courts have frequently to deal. Cf. W. R. Craig & Co. v. Johnson, 225 Ky. 440, 9 S. W. (2d) 110.

The legal relationship subsisting between a customer and his broker has been the source of some diversity of opinion. The Massachusetts courts take the view that the relationship resulting is contractual and the broker becomes the owner of the customer's property placed with or purchased by him. See annotation to Sackville v. Wimer, 41 A. L. R. page 1265. The great weight of authority, however, is to the effect that the customer does not part with his title to property so situated, but that the broker merely has a lien thereon as a security, and upon payment of the debt secured, the customer is entitled to a delivery of his stock. The true relation created under such circumstances is that of pledgor and pledgee, with reference both to the stocks purchased on margin, and stocks separately pledged to protect the margin. Sackville v. Wimer, 76 Colo. 519, 233 P. 152, 41 A. L. R. 1255, annotation 1258.

The Supreme Court of the United States, in Richardson v. Shaw, 209 U. S. 376, 28 S. Ct. 515, 52 L. Ed. 841 (14 Ann. Cas. 981), quoted with approval from Jones on Pledges, sec. 496:

"The broker acts in a threefold relation: First, in purchasing the stock he is an agent; then in advancing money for the purchase he becomes a creditor, and finally, in holding the stock to secure the advance made, he becomes a pledgee of it. It does not matter that the actual possession of the stock was never in the customer. The form of the delivery of the stock to the customer, and a redelivery by him to the broker, would have constituted a strict, formal

pledge. But this delivery and redelivery would leave the parties in precisely the same situation they are in when, waiving this formality, the broker retains the certificates as security for advances.''

The exigencies of the present case do not require us to pursue the subject so far as it relates to the title of Sargent to the 200 shares of stock in the two corporations purchased on margin. That stock was sold and the proceeds used to extinguish the debt due from Sargent. The controversy now relates solely to the stocks of Sargent put up with the broker as collateral security, with authority to pledge them to Thompson & McKinnon. The transaction is not rendered different or more difficult because Sargent did not make the pledge direct to Thompson & McKinnon. Whiteld was merely his agent employed in that transaction. The title of the customer was not lost by permitting the broker to use, sell, or repledge the securities. Even under the Massachusetts rule, where a customer deposits stocks with a broker as collateral security for a trading account, the stocks remain the property of the customer, subject alone to the rights created by the pledge. His rights to the property, even when repledged on the broker's note, is not defeated and the customer does not become a mere general creditor of the broker. In re Gay & Sturgis (D. C.) 251 F. 420; Furber v. Dane, 203 Mass. 108, 89 N. E. 227.

When securities are pledged with a broker to secure him against loss, he must keep them or others of the same amount and kind with which to return the pledge when the debt is paid. The principle is obviously sound and just and is upheld by the great weight of authority. Turner v. Schwartz, 140 Md. 465, 117 A. 904, 24 A. L. R. 444, Annotation 452; Sackville v. Wimer, 76 Colo. 519, 233 P. 152, 41 A. L. R. page 1258; Thomas v. Taggart, 209 U. S. 385, 28 S. Ct. 519, 52 L. Ed. 845; Hadfield v. Tracy, 101 Conn. 118, 125 A. 199, 34 A. L. R. 581; Lamprecht v. State, 84 Ohio St. 32, 95 N. E. 656; In re Mercantile Trust Co., 210 N. Y. 83, 103 N. E. 884; Horton v. Morgan, 19 N. Y. 170, 75 Am. Dec. 311; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Duel v. Hollins, 241 U. S. 523, 36 S. Ct. 615, 60 L. Ed. 1143; Browne v. Thorn, 260 U. S. 137, 43 S. Ct. 36, 67 L. Ed. 171; Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047.

But is is argued that when the identical certificates turned over to the broker were repledged and the right obtained to substitute other securities, the identity of the property was lost, could no longer be traced, and the. right of the broker to substitute other securities was inconsistent with ownership in the customer and operated to convert the relationship into that of mere debtor and creditor. But this course of reasoning confuses the rights of the agent and the rights of the customer, and amounts to a perversion of the undertaking of the parties. A certificate of stock in and of itself is not property, but mere evidence of the right which the stockholder has. Commonwealth v. Peebles, 134 Ky. 121, 119 S. W. 774, 23 L. R. A. (N. S.) 1130, 20 Ann. Cas. 724; Richardson v. Shaw, supra. The authority of the agent to deal with the certificates does not confer title upon him, and his obligation to deliver so many shares of stock when the conditions are met is not affected or impaired. The rule is a practical one, facilitates the convenience and dispatch of business, and infringes upon the rights of none. When the receiver found among the assets of the defunct firm sufficient stock to return to Sargent the amount of his pledge, it was his duty to return it, and he had no right to assert title to it because they were not the identical certificates pledged. This question has arisen frequently, and the authorities are uniform that the identity of the stock is not lost by a transfer to other certificates. Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Skiff v. Stoddard, 63 Conn. 198, 26 A. 874, 28 A. 104, 21 L. R. A. 102; Caswell v. Putnam, 120 N. Y. 153, 24 N. E. 287; Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047.

All that is necessary is that the broker, or his assignee, shall have available for release to the customer a like number of shares of the stock that was pledged with him, and it is not essential that he retain or return the identical certificates. Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Kier v. Steer (C. C. A.) 282 F. 202.

· The whole confusion of thought upon the subject is introduced by the dual nature of the relationships resulting when a customer buys stocks on margin, or puts up collateral security. In so far as the broker advances a portion of the purchase price, the relation of debtor and creditor arises as to the loan of money or credit;

the customer being obligated to pay the broker the amount advanced with interest. The stock purchased or pledged, however, belongs to the customer, who is entitled to the earnings, or profits, and must bear any losses that may result. The broker retains only a lien to secure what may be due him. As to the stock itself the true relationship is that of pledgor and pledgee, the title remaining with the customer subject to the lien. Upon payment of the debt, the owner is entitled by the contract of the parties to a release and return of the securities purchased or held in pledge, and the result accords with a just conception of both law and equity, 14 C. J. 731.

The dominant feature of the transaction is the purchase of the stocks for the customer. The lending of money or credit is a mere incident of the transaction, albeit an important one. The divergence in opinion arises when the emphasis is placed on the incident of lending involved in the transaction to the exclusion of the actuating motive of the whole matter, which was the purchase of stocks for the customer. Compare the opinion of Judge, now Mr. Justice Holmes, in Chase v. Boston, 180 Mass. 458, 62 N. E. 1059, where an English authority is invoked to save the Massachusetts Doctrine from being "alone in a desert of logic," and his later concurrence "with lingering doubt" in the opinion of the Supreme Court of the United States in Richardson v. Shaw, 209 U. S. 385, 28 S. Ct. 519, 52 L. Ed. 845 (14 Ann. Cas. 981).

Counsel for the appellee invoke the case of Farmers' Bank of White Plains v. Bailey, 221 Ky. 55, 297 S. W. 938, where bonds deposited with a bank as a bailee had been converted by the bank. The proceeds of the bonds were commingled with other assets of the bank and their identity lost. Whilst the bank had on hand other bonds, it was not shown when the latter bonds were purchased, or that the funds derived from the converted bonds had been invested in the bonds on hand. It was held that in such cases the depositor had no lien. The case is not in conflict or inconsistent with the cases dealing with brokers and their customers. The assets of the insolvent bank constituted a trust fund for all its depositors, and for the bailor to establish a priority it was essential that he should trace the proceeds of the bonds specially deposited with and converted by the bank directly into the estate of the trustee. 26 R. C. L. p. 1356. The principles of that case have no pertinency to the situation with which we are now confronted. The pervading principle

that applies here is that when stocks are pledged as collateral security, whether with a banker or a broker, and debt thereby secured is paid, the collateral is released to its owner. 7 C. J. sec. 312, p. 634; 7 C. J. sec. 456, p. 717; section 457, p. 718; Thomas v. Taggart, supra.

Our consideration of the case constrains us to the conclusion that the lower court erred in dismissing the plaintiff's petition.

Judgment reversed, with directions to enter a judgment for appellant for the stocks claimed by him.