EDWARD L. GEARY & others *vs.* MAURICE V. BLOMERTH.

Middlesex.   November 4, 1940. — May 26, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Practice, Civil,* Exceptions: whether error harmful, general exception; Requests, rulings and instructions. *Error,* Whether harmful. *Contract,* Construction, What constitutes, With stockbroker, Performance and breach. *Damages,* Mitigation. *Payment. Stockbroker.*

An exception to the admission of a memorandum which tended to support a contention of the excepting party showed no prejudicial error and must be overruled.

A general exception to references to a certain subject matter, made at some length in different parts of an extensive charge, without the excepting party's pointing out any particular statements as objectionable, must be overruled.

A stockbroker's acceptance of a particular kind of check from a customer in payment for stock bought for him by the stockbroker did not of itself require a finding that the stockbroker agreed that he would accept the same method of payment in a later transaction.

That a stockbroker's customer, when instructing the stockbroker to purchase stock for his account, erroneously believed that the stockbroker would accept a particular method of payment in view of his having accepted it in a previous transaction, did not support a contention by the customer that there was no meeting of minds in the later transaction.

In an action by a stockbroker against a customer for payment for stock purchased on the customer's order, the stockbroker having refused a tender of a certain kind of check for the amount due, there was no error in the denial of a ruling requested by the customer that there could be no recovery if he had "stipulated" that he would pay only by such a check; instructions given, in substance that the stockbroker was not required to accept such a check unless it was a term of the parties' contract that he should do so, were sufficiently favorable to the customer.

There was no inadequacy in instructions to the jury that if a stockbroker, whose customer had failed to pay him for stock purchased for the customer's account, delayed selling the stock for an unreasonable length of time and the market value had declined at the time of the sale, that could be considered in determining the amount due from the customer to the stockbroker.

After a creditor had refused his debtor's tender of payment by a check made by the debtor as trustee of a trust payable directly to the creditor, there was no error, in an action by the creditor against the debtor, in instructions to the jury that one taking a trustee's check in satisfaction of a personal obligation of the trustee does so at his peril.

CONTRACT. Writ in the First District Court of Eastern Middlesex dated January 31, 1938.

Upon removal to the Superior Court, the action was tried before *Swift*, J.

*D. J. McGillicuddy*, for the defendant.

*E. O. Proctor*, for the plaintiffs.

DOLAN, J. This is an action of contract in which the plaintiffs, members of a stock brokerage firm, seek to recover of the defendant a sum of money, alleged to be due them for certain shares of stock purchased by them for the account of the defendant. At the trial the jury returned a verdict for the plaintiffs, and the case now comes before us on the defendant's exceptions to the admission of certain evidence, to the denial of his motion for a directed verdict, to the refusal of the judge to give certain requests for instructions to the jury, and to certain portions of the judge's charge.

The evidence would warrant the jury in finding the following facts: The defendant had been a customer of the plaintiffs for a number of years. In prior dealings with the plaintiffs it had been the practice of the defendant to pay for securities purchased for his account with checks drawn by him in his capacity as trustee of the "Reconstruction Realty Trust." This method of payment had been accepted by the plaintiffs prior to and in November, 1936. Most of the defendant's property consisted of a seven-tenths beneficial interest in this trust, the remaining interest in the trust being in relatives of the defendant. The trust deed was recorded. Under its terms the defendant, as trustee, had wide powers of management and control, the other beneficiaries being accorded only the right to an accounting of income. By clause 1 of the trust deed it is provided that parties contracting with the trustee should look only to the trust estate for satisfaction of their claims and that the liability of the trustee was limited to the extent of the trust. The trust deed was executed in 1932, and it is provided therein that the trust continue for ten years from the date of execution. The purposes of the trust may be summarized as "generally dealing in . . . real estate."

Some time in November, 1936, following a purchase of

stock by the plaintiffs for the defendant, one of the plaintiffs' employees said to the defendant: "Regarding that trust of yours, we have a rule that we cannot take any more trustee's checks, but if you will tell us that you control this trust, why we will purchase the stock [not that here involved] for you." The defendant said: "Yes, I do." He was then asked if he would "put that in writing." He replied: "Why certainly, I will be pleased to, I will write you right away today." On November 27, 1936, the defendant sent a letter to the plaintiffs stating that he was "sole owner and trustee and account to no one for same . . . [and that] this trust contains nothing but real estate that belongs to me."

On March 16, 1937, a memorandum was prepared at the direction of the plaintiffs' office manager, one O'Keefe, and placed in the defendant's file in the credit department of the plaintiffs and on the "address file." The memorandum was as follows: "The writer has been advised by T. J. O'Keefe, Jr. to place an orange label in the file against this name so that the next transaction made and all subsequent ones will be reported to him. The letter under date of Nov. 27, 1936, enclosed in this folder is, in O'Keefe's judgment, not an acceptable one. It is his intention to bring the matter before a partner when the next occasion arises when we are asked to accept funds as we were on Nov. 27, 1936. Unless otherwise instructed by O'Keefe, no funds are to be accepted with this letter of this date as authority." O'Keefe knew of the 1936 transaction as a result of an examination of the plaintiffs' books as a member of their audit committee. This memorandum was admitted in evidence subject to the defendant's exception.

On October 2, 1937, the defendant telephoned one Haskell, the manager of the plaintiffs' stock department, and ordered two hundred shares of stock of the Packard Motor Company at a price of "$7\frac{1}{4}$." The order was a straight order and was to be good until cancelled. The evidence, however, relative to the conversation had between Haskell and the defendant on October 2, 1937, when the defendant was ordering the purchase of the shares of stock involved,

was conflicting. Haskell testified that there was no con-
versation with reference to the method of payment; but
the defendant testified that there was talk as to this sub-
ject matter in which the defendant told Haskell that "If
they won't take the check the same as they used to . . . I
won't have anything to do with it," that Haskell asked the
defendant "if . . . [he] wanted him to intercede some
more" and that he, the defendant, said, "No, I am leaving
right away for New York, and just forget the entire trans-
action." The plaintiffs purchased the shares of stock
through their New York office on October 4, 1937, at
"$7\frac{1}{4}$," advancing their own funds to complete the trans-
action, and on the same day sent the defendant a notice
of the purchase containing its terms, the commissions
charged, and a clause which purported to give the plain-
tiffs the power to sell all or any part of the stock whenever
they deemed it expedient for their protection, without de-
mand upon or notice to the defendant. The notice also
recited that the defendant was to pay promptly any bal-
ance remaining due after such a sale.

No check having been received by the plaintiffs within
a day or two after the purchase of the stock, Haskell,
"following the practice of the office," telephoned to the
defendant on October 8, 9 and 10 "but was told that the
defendant was not there." He did, however, reach the
defendant by telephone on October 11 and, as a result of
a conversation he had had with the plaintiffs' cashier,
told the defendant, who promised to send a check on that
day, to send a personal check and not a trustee's check as
he had done on another occasion. The defendant said, in
substance, that he had no personal checking account and
that he paid all his bills by "trustee's check." Haskell
then suggested that the defendant get a cashier's check,
but he declined to do so. Haskell then said that he would
consult his office manager and see if there was a possibility
of accepting a trustee check if made out to the defendant's
order and indorsed over to the "firm." The defendant
told Haskell he "would have to be pretty fast because he
was going to leave within a very short time." Haskell

had some talk with the office manager and then telephoned the defendant, but "found that he had left." On October 13 the plaintiffs received a letter from the defendant, dated October 11 and enclosing a check for $1,465.20 "in full payment for the 200 shares of Packard Motor Stock." The check was signed "Reconstruction Realty Trust, Special Account Maurice V. Blomerth." Upon the receipt of this letter the plaintiffs wrote to the defendant,[1] suggesting that he draw a check to his own order and indorse it to "Hornblower & Weeks." The defendant not having complied with this request the plaintiffs wrote him on October 27, stating that they had expected him to substitute some other form of remittance in place of the check that had been returned to him, and also that they had received an extension from the Boston Stock Exchange under which he would be allowed until October 28 to make payment. On November 26, 1937, the plaintiffs' attorney sent a letter to the defendant suggesting various methods of payment that would be acceptable to the plaintiffs. The defendant received all the letters addressed to him. He answered the "one where . . . [the plaintiffs] sent a bill for the stock." After that he never answered any letters from the plaintiffs or from their lawyer. He did not open them until "pretty near when the case came up." On December 8, 1937, the plaintiffs' attorney sent a letter to the defendant stating that unless the matter was taken care of by him by "12 o'clock Friday" they would advise a sale of the stock and the defendant would be charged with any balance due. On December 10, 1937, the plaintiffs sold the stock at "$4\frac{7}{8}$" per share. On October 11 the prices of Packard stock were "$6\frac{5}{8}$" high and "6" low. On October 14 the high was "6" and the low "$5\frac{5}{8}$."

It is unnecessary to decide whether the memorandum before referred to was admissible under the provisions of G. L. (Ter. Ed.) c. 233, § 78, "as a memorandum or record of any act, transaction, occurrence or event . . . made in good faith in the regular course of business" within the

---

[1] The check was returned to the defendant with the plaintiffs' letter. — REPORTER.

meaning of the statute, or otherwise, since in the present case its admission was not harmful to the defendant. The memorandum tended to support the defendant's contention that on October 2, 1937, Haskell insisted upon a personal check just as the defendant testified that he did. It had no tendency to show, as testified by Haskell, that there was no conversation between him and the defendant about sending a personal check until October 11, 1937. There was no prejudicial error in its admission.

In connection with the subject just discussed we take up the defendant's exception "to the court's reference to exhibit 11, (the memorandum of March 1937) and the court's instructions to the jury relative thereto, the defendant contending that there is no evidence that any notice of this memorandum was ever given to the defendant, and that it could in no way have any effect upon him or this controversy." The charge was lengthy and dealt with the law governing the various aspects of the case. At its conclusion, the defendant's counsel took several exceptions including the one under discussion. As a result certain modifications or additions to his charge were made by the judge, but none concerned the exception to his references to the memorandum. Such references were made in different parts of the charge and at some length. So far as appears in the record, the defendant's counsel did not point out to the judge the particular statements or rulings which were intended to be the subject of the exception, so that if wrong he could correct them. Such a general exception will not be sustained. *Mitchell* v. *Lynn Fire & Police Notification Co. Inc.* 292 Mass. 165, 168. *O'Connor* v. *Benson Coal Co.* 301 Mass. 145, 150–151.

In support of his motion for a directed verdict, the defendant's sole contention is that, when he ordered the stock in question, so far as he knew, his letter of November 27, 1936, to the effect that he was the sole owner of the property in the trust, was satisfactory to the plaintiffs with respect to their rule regarding trustees' checks, they not having notified him to the contrary, and that when he ordered the stock involved there was no meeting of the

minds of the parties, since he believed that a trustee's check made payable to the plaintiffs would be accepted. This contention cannot be sustained. The letter of November 27, 1936, was written by the defendant in connection with another transaction in which the plaintiffs purchased stock for the defendant, payment of which by the defendant's check as trustee was accepted by the plaintiffs in consequence of this letter. The acceptance of this method of payment in connection with that transaction could not bind the plaintiffs as to future transactions, and the jury was not obliged to find on the conflicting evidence that the plaintiffs expressly or impliedly agreed to that method of payment in the later transaction with which we are here concerned.

The defendant's third exception was to the refusal of the judge to give the defendant's first request for an instruction "That on all the evidence, there was no legal contract to buy stock from the plaintiffs." There was no error in the refusal to give this request since it had no application to the transaction involved.

The defendant's fourth exception is to the refusal of the judge to instruct the jury that "If the jury find that the defendant stipulated that the only way he would pay the plaintiffs for stock was by trustee's check, such as was tendered, there can be no recovery." The judge, however, instructed the jury, in substance, that it was open for them to find that the defendant had a right to assume from the practice in earlier transactions that he might properly proffer the plaintiffs his check, as trustee, in payment for the stock, but that the plaintiffs were under no obligation to accept such a check in the absence of an agreement so to do. He further instructed the jury as follows: "The court has already instructed you, I think but if not, I will state it now and will repeat it if it has already been given, that parties have a right always to make a contract with each other as to the mode of payment in a transaction where one purchases from another or one authorizes another to buy for him for his account; and if an agreement or a contract was made, that binds both parties until it is repudiated, until it is cancelled."

No exception was taken to this instruction. These instructions were sufficiently favorable to the defendant.

The defendant excepted to the denial of his fifth, sixth, seventh and eighth requests for instructions. These requests dealt with the plaintiffs' duty to mitigate damages by selling the shares within a reasonable time after the defendant's failure to pay for them.

In substance, by these requests the defendant sought to have the judge instruct the jury that the plaintiffs had no right to delay sale of the stock if the market price was going down, and charge the loss to the defendant; that, when the plaintiffs wrote the defendant on October 27, 1937, that the time for payment for the stock had been extended to October 28, if the jury should find that the plaintiffs had not already been negligent in failing to sell the stock, it was the plaintiffs' duty to sell the stock on or immediately after October 28, 1937, and the defendant could assume that they would do so; that "If the plaintiffs actually purchased stock for the defendant as alleged, it was their duty to sell the same when the defendant refused to accept or pay for same"; and that, if the jury found "that the plaintiffs were merely acting as brokers and did not actually bind themselves to pay for the stock, there can be no recovery for breach of contract by the defendant."

The plaintiffs having bought the stock for the defendant could hold it for his account and recover from him the full cost, *Giddings* v. *Sears*, 103 Mass. 311, 313, or they could sell the stock within a reasonable time after his failure to pay for it and recover from him the difference between the purchase price and the sale price. *Bendslev* v. *Lovell*, 235 Mass. 133, 137. *Commonwealth* v. *Hull*, 296 Mass. 327, 331. The evidence was conflicting with respect to whether the defendant ever made a clear repudiation of the transaction. There is no evidence that he ever directed or suggested a sale of the stock. But, in any event, the judge specifically instructed the jury that it was for them to determine whether the plaintiffs had waited more than a reasonable time before selling the stock, and that, if the plaintiffs held the stock for "an unreason-

able time, and something happened to the market" the jury could consider that "in determining the amount that might be due." We are of opinion that the subject of mitigation of damages was adequately dealt with by the judge in his charge. *Squires* v. *Fraska,* 301 Mass. 474, 476, and cases cited. *Birch* v. *Strout,* 303 Mass. 28, 33.

The defendant's exception to instructions given by the judge with reference to payment by check is disposed of by what we have already said with reference to the defendant's fourth exception.

There was no error in the instruction given by the judge that persons taking trustees' checks in satisfaction of personal obligations of a trustee do so at their peril. This was an accurate statement of the law, and tended to make apparent to the jury a reasonable basis, in the absence of agreement express or implied to do otherwise, for the plaintiffs' refusal to accept the trustee check sent them by the defendant in attempted payment of his personal account. See *Childs, Jeffries & Co. Inc.* v. *Bright,* 283 Mass. 283, 294; *Proctor* v. *Norris,* 285 Mass. 161, 164, 165; *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 253; *Banks* v. *Everett National Bank,* 305 Mass. 178, 182; *Tierney* v. *Coolidge,* 308 Mass. 255, 259.

Other exceptions taken to the judge's charge have been considered by us. It is unnecessary to discuss them other than to say that, on the record, we are of opinion that no error is disclosed with reference to them.

*Exceptions overruled.*