500

HERRON NORTHWEST, INCORPORATED, *Petitioner*, v. MERLYN E. DANSKIN *et al., Respondents.*\*

*Riddell, Williams, Voorhees, Ivie & Bullitt,* by *George E. Frasier,* for petitioner.

*Arthur & Hanley,* by *Terence Hanley,* for respondents.

ROSELLINI, J.—This action was brought by a broker to recover damages attributable to a customer's failure to pay for shares of stock which he had ordered the broker to purchase for him. The evidence showed that the customer, the respondent Merlyn E. Danskin, was unable to pay for the shares on the date set for payment, that the market was falling, and that the petitioner sold the shares at a price less than the price for which it had purchased them, resulting in a loss of approximately $12,000.

The trial court's judgment for the petitioner was reversed by the Court of Appeals, which, on its own motion, raised the question of the jurisdiction of the state courts to hear and determine the action.

\*Reported in 476 P.2d 702.

The trial court had based its judgment upon "Regulation T," promulgated by the Board of Governors of the Federal Reserve System pursuant to section 7(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78g) which required the petitioner to sell the shares purchased for the respondent when they were not paid for within 7 days after the date of their purchase by the petitioner. The Court of Appeals took note of the fact that section 27 of the Securities Exchange Act confers exclusive jurisdiction upon the district courts of the United States "of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." It concluded that, if the obligation of the respondent to pay for the shares of stock was a duty created by the act, the trial court did not have jurisdiction; and that if it was a common law duty, the trial court's findings were inadequate to sustain it.

Since the judge who tried the case had retired in the interim, the cause was ordered remanded for a new trial on the common law liability. This court has granted a petition for review.

It is the rule, of course, that the trial court can be sustained on any theory within the pleadings and the proof. *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 446 P.2d 200 (1968). Furthermore, we have said that where there is no serious dispute in the essential facts, a remand for the entry of findings of fact would be a useless act. *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965) and cases cited.

The Court of Appeals recognized its right to sustain the judgment upon a proper theory, if one could be found within the pleadings and the proof; but it concluded that, without the authority of the federal regulation or the express authorization of the defendant, the petitioner had no right to sell the stock and that sale of the stock by the petitioner would amount to a conversion. In this the Court of Appeals erred.

The record shows that the respondent knew that under ordinary circumstances he must pay for stock purchased within four business days after the purchase, and that he

was granted three extra business days in this transaction. By his own testimony, he knew that payment was due on July 25. He insisted, on the one hand, that his loss was caused by the petitioner's failure to sell the stock earlier (even though he had not authorized such a sale) and, on the other hand, that it resulted from the petitioner's refusal to grant him an extra 2-day extension.

The trial court found as a fact that the respondent's security transactions with the petitioner were handled through a "special cash account." The uncontradicted evidence was that such accounts required that payment be made within four business days after the date of purchase. The trial court also found that the petitioner had erroneously told the respondent on July 25, 1966, that a 2-day extension had been granted. Implicit in this finding is a further finding that the date originally set for payment was July 25; otherwise, no "extension" would have been needed.

There was a further finding that respondent had strained his credit to the breaking point, that he had not made arrangements for payment for the stock and was unable to do so in view of the drop in its market value. He could not have paid for the stock on July 25, 26 or 27. Furthermore, for a considerable period of time after July 26, 1966, the trial court found, the respondent could have repurchased the stock at a much lower price than that for which it was sold, had he been willing and able. As the trial court observed in its oral opinion, the respondent could have recouped his losses had he done so, since the stock subsequently rose in price far above the price which the petitioner had paid when he purchased the stock for the respondent.

Assuming, without deciding that the Court of Appeals was correct, that the trial court lacked jurisdiction to decide the case if it arose solely out of a violation of Regulation T of the Securities Exchange Act, the superior court nevertheless had jurisdiction to hear and determine the petitioner's common law action for breach of contract. The Court of Appeals acknowledged this but thought that the findings were inadequate. If a finding that the respondent had ex-

pressly authorized the petitioner to sell the stock were necessary, there would be substantial merit in this view. However, the petitioner's right to recover does not depend in law upon the existence of such an express authorization.

It is the settled rule of law that where a customer defaults in the payment of stock purchased for him or refuses to accept and pay for such stock, the broker may sell the stock and hold the customer responsible for any deficit. *Mass v. Gordon,* 101 So. 2d 836 (Fla. 1958); *Geary v. Blomerth,* 309 Mass. 91, 34 N.E.2d 922 (1941); *Eastman v. Kendall,* 256 Mich. 215, 239 N.W. 263 (1931); 12 Am. Jur. *Brokers* § 148, at 889 (1964); 12 C.J.S. *Brokers* § 95, at 231 (1938). *See also Baldwin v. Peters, Writer & Christensen,* 141 Colo. 529, 349 P.2d 146 (1960), stating the rule that, if the customer refuses to complete the transaction, the measure of damages is the difference between the authorized purchase price and the amount realized upon a subsequent sale. *And see Richter v. Poe,* 109 Md. 20, 71 A. 420 (1908), holding that where a customer had contracted for the purchase of stock but had failed to pay for it, and the broker sold it in a falling market, the broker was not liable for conversion. Even stock purchased on a margin account may be sold immediately in a falling market if the customer refuses to pay the balance of the purchase price or keep his margin good. *See Sackville v. Wimer,* 76 Colo. 519, 233 P. 152, 41 A.L.R. 1255 (1925). *See* Annot., *Measures of damages for buyer's breach of contract to purchase shares of stock,* 44 A.L.R. 358 (1926).

The court, in *Mass v. Gordon, supra,* stated the applicable law as follows:

> In dealings between a stockbroker and a customer, when an authorized purchase of stock is made by a broker, and the customer defaults by refusing to accept and pay for the stock, the broker has an election of remedies. He may treat the stock as the property of the customer, and sue for the full purchase price upon a tender of the stock; or, he may sell the stock promptly or within a reasonable time, and recover the difference between the purchase price and the amount received on such sale. If the broker chooses to retain the stock and treats it as his

own, as was done in this instance, the second of those remedies is applicable, and the measure of his damages is the difference between the purchase price and the amount for which the stock could have been sold on the *date of default* or within a reasonable time thereafter.

(Italics ours.) *Mass*, 101 So. 2d at 837-38.

We do not have a case directly in point in this jurisdiction but this court has recognized the right of a broker to pledge margin collaterals of his customers up to the amount of the debts due from them. *Vance Lumber Co. v. Fraser, Goodwin & Colver*, 162 Wash. 347, 298 P. 438 (1931). Both of these rules are designed to protect the broker from losses occasioned by the default of his customer, and the right of a broker to sell stock on a falling market, when the customer refuses to pay for it, has the additional virtue of enabling the broker to mitigate the damages which the customer is obligated to pay by reason of his failure to pay for the stock according to his agreement.

It is plain from the trial court's findings that the respondent was in default on July 26 and that, even if he was not in default until July 28, he could not have and would not have raised the money to purchase the stock on that date. The market was falling. Within 5 days after the plaintiff sold it, the stock generally declined and did not return to the price at which it was sold until mid-October. The respondent's loss was caused, not by the petitioner's sale of the stock but by the decline in the market price, a situation over which the petitioner had no control.

The evidence and the findings established the petitioner's right to recover its damages, which were the difference between the price which it paid for the stock, as authorized by the respondent, and the price at which it sold the stock upon the respondent's default. The respondent offered no legal defense to the action. It was obvious, as the trial court observed, that the respondent had gambled on a rise in the market price of the stock and had expected to finance its purchase by pledging it at the bank. When the price fell, the respondent's plan fell with it, since the bank would not finance the full purchase price. This misfortune of the re-

spondent was in no respect attributable to any act or failure to act on the part of the petitioner. The petitioner performed its duties under the agreement with the respondent and under the applicable law and is entitled to recover its losses.

The decision of the Court of Appeals is reversed and the judgment of the trial court is reinstated.

ALL CONCUR.

January 18, 1971. Petition for rehearing denied.